Joseph F. Gagliardi, J.
Defendant’s motion to dismiss the complaint, wherein a Federal civil rights cause of action is asserted, raises a host of complex issues.
THE PLEADINGS
The within complaint predicates jurisdiction in this court under the supremacy clause of the Federal Constitution (art VI, § 2) and section 1983 of title 42 of the United States Code. The claim is for monetary redress in the sum of $500,000 for alleged deprivation of plaintiffs civil rights. The allegations state that on September 5, 1975, plaintiff was stopped on a State parkway in Dutchess County by the defendant, a member of the New York State Police Department, and was issued two simplified traffic informations — one for failure to affix a registration sticker, and one for speeding. Ten minutes later defendant stopped plaintiff again, "assaulted, physically affronted, searched and maniculed [sic]” plaintiff, who was then "pushed” into the patrol car which was driven at "dangerously high rates of speed * * * negligently, carelessly, recklessly”, putting plaintiff "in fear of his life”. Plaintiff was then "manhandled” by defendant just prior to plaintiffs appearance before a Magistrate, whereupon he was released on $40 bail, although defendant issued two more uniform traffic tickets for speeding and failure to signal on change of lanes. The complaint further alleges: "All of the above acts were performed by the Defendant, P.J. Leamy, under color of the laws of the State of New York, in violation of Title 42, United States Code, Section 1983, in that said acts were excessive, unnecessary, unwarranted, unjustified, without cause or probable cause, wilfully, wantonly, maliciously, intentionally and with clear intent to deprive the Plaintiff of the rights, privileges and immunities secured to him under the Constitution of the United States of America, Acts of the Congress of the *3 United States of America, which provide for the equal rights of citizens of the United States, and which rights, privileges and immunities are guaranteed by the due process clauses of the Constitution of the United States of America and Title 42, United States Code, Section 1983, et seq.”
Suit was commenced by service of the instant summons and complaint on September 3, 1976.[1] Two days prior thereto plaintiff sued the State of New York, defendant’s employer, in the New York Court of Claims, for the events in question. The claim filed there indicates that on May 1, 1976, plaintiff was found guilty after trial in a local criminal court (Justice Court, Town of Stanford, Dutchess County) on certain of the simplified traffic informations and was fined the sum of $200. Plaintiff sued for $275,000, of which sum $250,000 was claimed as punitive damages. The record also reveals that plaintiff is a self-employed businessman residing in New York County.
THE MOTION
Pursuant to subdivision 2 of section 17 of the Public Officers Law, the State Attorney-General has assumed defense of the instant action and, prior to service of an answer, has moved, as indicated in the motion note of issue, to dismiss the complaint for lack of subject-matter jurisdiction (CPLR 3211, subd [a], par 2), another action is pending between the same parties for the same relief (CPLR 3211, subd [a], par 4) and the complaint fails to state a cause of action (CPLR 3211, subd [a], par 7). Plaintiff’s counsel offered opposition by affirmation which appeared to be in the nature of a cross motion dismissing the instant motion. Said affirmation will be deemed an affidavit in opposition.
*4 By interim decision dated November 10, 1976, the court gave notice of its intent to convert the motion into one for summary judgment. Additional affidavits, memoranda and documents were submitted to the court, and the matter deemed fully submitted on December 29, 1976.
Plaintiff has submitted an affidavit of merits that merely recites the allegations contained in the complaint. Attached to plaintiff’s notice of intention to file a claim in the Court of Claims is an "Accounting of Events”, wherein plaintiff states that his wife and maid were with him in the vehicle and witnessed some of the events alleged. Plaintiff also annexed a copy of his bill of particulars filed in the Court of Claims which reveals that the two occurrences involved were separated by only three minutes, that he was convicted after trial in the Justice Court, Town of Stanford, on June 23, 1976, for speeding and fined $200, that he was convicted after trial in the Justice Court, Town of Clinton, on October 4, 1976, for failure to signal while changing lanes and was fined $50. Notices of Appeal from both convictions have been filed with the Appellate Term, Ninth and Tenth Judicial Districts, and leave to extend the time to perfect the appeals for the February, 1977 Term had been granted, but the appeals were dismissed on February 1, 1977, for failure to perfect them.
Defendant, in an affidavit of merits, states that he has been a New York State trooper since May 6, 1968, and prior to September 5, 1975, had issued approximately 3,000 traffic tickets and never been the subject of a personnel complaint or defendant in a lawsuit arising out of police activities. The affidavit further reveals that the two remaining traffic citations (speeding and failure to properly display registration sticker) are pending in the Justice Court, Town of Pleasant Valley. Defendant also states that upon arresting plaintiff, he was required by departmental directive to handcuff him while transporting him to the Magistrate. Defendant denies the essential allegations of assault and driving recklessly.
Copies of the records maintained by the Justice Courts of Clinton and Stanford have been submitted for the court’s consideration. The Stanford records merely consist of the record of conviction for speeding after a nonjury trial and verification thereof by the court clerk and Town Justice. The records of the Clinton Court are more complete and contain the Town Justice’s typed trial notes which reveal that plaintiff had brought his own stenographer, but his counsel refused the *5 opportunity to transcribe the testimony. The trial notes reveal that five tickets were issued by defendant on September 5, 1975, one of which was to plaintiff’s wife, but the record herein is otherwise silent thereon. Defense counsel there (plaintiff’s counsel here) was permitted to fully explore the events in question that resulted in the issuance of the tickets. After hearing the testimony of plaintiff and defendant, the court, sitting without jury, found plaintiff herein guilty of failing to signal while changing lanes.
SUBJECT MATTER JURISDICTION
The Assistant Attorney-General argues that the State is the real party in interest, and a suit against it in State court can only be heard in the Court of Claims. This argument, however, is more directly related to that branch of the motion concerning the alleged failure to state a cause of action. In reality, the primary question raised, as briefed by plaintiff, is whether any court of this State has jurisdiction to entertain a claim under section 1983 of title 42 of the United States Code.
"It is a well-settled rule that subject matter jurisdiction, otherwise nonexistent, may not come into being through waiver or estoppel (Matter of Newham v Chile Exploration Co., 232 NY 37). It may not be conferred by consent or agreement of the parties, and the objection as to lack of subject matter jurisdiction may be raised at any time” (Verney v Verney, 53 AD2d 608). Thus, subject matter jurisdiction cannot be vested in the courts of this State by consent (Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324) and this rule applies with equal force in the Court of Claims (Matter of Senitha v McGurk, 252 App Div 304, affd 284 NY 730). Subject matter jurisdiction is lacking where the court enters a judgment which, by the law of its creation, it had no authority to make (Murphy v Itcha Realty Corp., NYLJ, May 21, 1971, p 19, col 6). "Absence of competence to entertain an action deprives the court of 'subject matter jurisdiction’; absence of power to reach the merits does not” (Lacks v Lacks, 41 NY2d 71, 75; see Barclay’s Ice Cream Co. v Local No. 757 of Ice Cream Drivers & Employees Union, 41 NY2d 269; Nuernberger v State of New York, 41 NY2d 111).
If the State is the real party in interest, its waiver of sovereign immunity embodied in section 8 of the Court of Claims Act authorizes suit against it only in the Court of Claims (NY Const, art 6, § 9; Breen v Mortgage Comm. of *6 State of New York, 285 NY 425; 55 NY Jur, State of New York, §§ 193-195; see Davidson, Claims against State of New . York [1954], passim). However, the State’s waiver of immunity is not absolute (Riss v City of New York, 22 NY2d 579; Weiss v Fote, 7 NY2d 579; Fonfa v State of New York, 88 Misc 2d 343), and even in the limited forum of the Court of Claims it has not consented to be sued or waived immunity in actions based on Federally-created rights (Maloney v State of New York, 3 NY2d 356, 361). Plaintiff properly concedes (as discussed infra), that a cause of action under section 1983 does not lie against a State (14 CJS, Supp, Civil Rights, § 129). Nonetheless, assuming for the moment that defendant is not a nominal party, and that the complaint states a cause of action, the issue is whether the State Supreme Court has jurisdiction of this civil rights claim.
The United States Supreme Court has held that, in the absence of a "valid excuse” (Douglas v New Haven R. R. Co., 279 US 377, 388; Chambers v Baltimore & Ohio R. R., 207 US 142), the State courts cannot deny access to litigants on Federal causes of action where such denial is "based solely upon the source of the law sought to be enforced” (McKnett v St. Louis & San Francisco Ry. Co., 292 US 230, 234; see Testa v Katt, 330 US 386; Grubb v Public Utilities Comm., 281 US 470, 476; Clafin v Houseman, 93 US 130). The guiding principle has been cogently summarized in Dowd Box Co. v Courtney (368 US 502, 507-508): "We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule”. Nonetheless, as the court further observed in Dowd Box Co., it is still necessary to utilize traditional methods of statutory construction by reviewing Congressional debates, the history and purpose of the legislation, to reach a conclusion whether jurisdiction is exclusive or concurrent. In the last-cited case, for example, the court concluded that enactment of the Labor Management Relations Act of 1947 (US Code, tit 29, § 141, et seq.), was not intended to displace traditional common-law remedies cognizable in State courts and, therefore, State courts had jurisdiction over claims presented pursuant to the act.
Indeed, as Alexander Hamilton stated in the Federalist *7 Papers (No. 82), it is "the general genius of the system” that concurrent jurisdiction evolve. Nonetheless, even that eminent authority noted that a difficult question on jurisdiction is posed where Congress enacts legislation peculiar to the Federal Constitution, creating a right unknown at common law and providing a remedy not previously cognizable in State court (see, also, 1 Kent’s Commentaries, 396-400).
While no simple formula exists, the general principle to be applied within the framework noted above is, succinctly stated, that absent Congressional intent to vest exclusive jurisdiction of Federal claims in Federal courts, State courts have concurrent jurisdiction and are ordinarily obliged to accept such causes of action (7B Moore’s Fed Prac [2d ed], pars 1-3, 85-1; 1 Carmody-Wait 2d, Courts and Their Jurisdiction, § 2:92; 21 CJS, Courts, § 526; 3 Sutherland, Statutory Construction [4th ed], § 67.03). The Supreme Court of this State is a court of unlimited jurisdiction (Kagen v Kagen, 21 NY2d 532) and when concurrent jurisdiction does exist, it should and does accept jurisdiction over Federal claims (Seaman v Fedourich, 16 NY2d 94, 102; United States of Amer. v Sirianni, 140 Misc 124, 127; see Currie, Fed Jur in a Nutshell, 137-138; 1A Moore’s Fed Prac [2d ed], pars 0.201-0.202; id vol 1, par 0.6 [3]), although the Federal courts retain the paramount duty to enforce Federally created rights (Robb v Connolly, 111 US 624, 627; see Steffel v Thompson, 415 US 452; Zwickler v Koota, 389 US 241).
In determining the jurisdictional fulcrum, it is necessary to understand the historical background of the subject statute and Congressional intent in prescribing jurisdiction (Dudley v Mayhew, 3 NY 9). Section 1983 of title 42 of the United States Code provides: "§ 1983. Civil action for deprivation of rights.
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress”.
Jurisdiction is vested in the Federal District Courts pursuant to title 28 (§ 1343, subd [3]) of the United States Code.
Section 1983 of title 42 of the United States Code (R.S. § 1979, Act of April 20, 1871, ch 22, § 1, 17 US Stat 13) was *8 the third of five civil rights acts enacted by the Reconstruction Congresses during the period 1866-1875. It has been called the "Third Enforcement Act”, and the Ku Klux (Klan) Act, but is commonly known as the Civil Rights Act of 1871 (Antieau, Federal Civil Rights Acts, §29 et seq.; Gressman, The Unhappy History of Civil Rights Legislation, 50 Mich L Rev 1323; Comment, 1967 Duke LJ 741; 3 Sutherland, Statutory Construction [4th ed], § 72.03). Its history and purposes are set forth at length in many United States Supreme Court decisions (Paul v Davis, — US-, 96 S Ct 1155; Monroe v Pape, 365 US 167; Zwickler v Koota, 389 US 241), and need only be briefly summarized here.
Section 1983 finds its origin in section 2 of the Civil Rights Act of 1866 (14 US Stat 27), which is now section 242 of title 18 of the United States Code, the criminal counterpart of the civil action (Lynch v Household Fin. Corp., 405 US 538). The Civil Rights Act of 1871 was entitled an act to "enforce the provisions of the Fourteenth Amendment” (17 US Stat 13). As originally conceived, the legislation was designed to enforce the provisions of the then recently enacted Fourteenth Amendment to the Federal Constitution and to afford access to the Federal courts to "Negroes denied equality” (Note, 24 So C L Rev 101; Note, 39 NYU L Rev 839; see Collins v Hardyman, 341 US 651). The statute originally provided that jurisdiction was vested "in the several district or circuit courts of the United States” (17 US Stat 13), but upon recodification in 1873-1874 the jurisdictional language was changed and is presently contained in section 1343 (subd 3) of title 18 of the United States Code, as giving original jurisdiction to the Federal District Courts.[2] One court has held that the original language was indicative of an intent to confer nonexclusive jurisdiction on the Federal courts (Brown v Pitchess, 13 Cal 3d 518 [discussed infra]). However, our Court of Appeals in the landmark case of Dudley v Mayhew (3 NY 9), decided in 1849, held that similar language regarding patent legislation inferentially established Congressional intent to vest exclusive jurisdiction of such matters in the Federal tribunals. The court there stated (pp 14-15): "But congress was then legislat *9 ing upon a right conferred primarily and exclusively by its own action, and was maturing a system for its origin, progress and support, and the language used must be construed in reference to those objects * * * When therefore the act declares that the' United States circuit courts (or district courts possessing similar powers) shall have original jurisdiction of all actions, suits, controversies and cases arising under the patent laws, the language is strong to show that it was intended to confine judicial action in such cases to those tribunals. It is undoubtedly true that those are, to some extent, inferior courts, and would have had no jurisdiction at all in such cases unless it had been directly conferred upon them by the act, and that therefore the grant of power to them does not necessarily exclude the action of others having co-ordinate or concurrent authority. But then if congress had intended that the state courts might take cognizance of those controversies, the terms used would have been less comprehensive — less peremptory — and although that body could not have directly conferred the power upon the state tribunals, they would have refrained from using terms which might well be interpreted as exclusive”. Judge Strong, speaking for a unanimous court in Dudley, further noted that Congress had created a right unknown at common law and in providing a remedy, the Federal forum, had set forth certain other statutory criteria including treble damages, not then applicable to State courts, and procedures on appeal limited to the Federal arena, wholly inconsistent with State procedure. In Chamberlain v Brown (223 Tenn 25, 32 [Tenn] [discussed infra]) where the court held that section 1983 jurisdiction resided solely with the Federal courts, it was observed that the original version of the statute provided for "the same rights of appeal, review upon error, and other remedies provided in like cases in such [Federal] courts”. One commentator, discussing the original statute and change in language in the recodification of the Federal Judicial Code, takes the position that initially Federal jurisdiction was exclusive but is now concurrent (Note, 82 Harv L Rev 1486, 1498, n 62; see Note, 70 Harv L Rev 509, 512).
Of course, the absence of the word "exclusive” in the grant of jurisdiction does not mean that in every situation where Congress creates a remedy giving jurisdiction to Federal trial and appeal courts, that State courts are ousted (Cook v Whipple, 55 NY 150). In the last-cited case it was determined that *10 the Federal bankruptcy laws did not divest State courts from exercising jurisdiction over contractual matters involving bankrupts since such jurisdiction previously existed.
The revision of the Judicial Code in 1873-1874 (and again in 1878), which resulted in the change of jurisdictional language carried forward in section 1343 of title 28 of the United States Code, does not affect our discussion on intent since the revision merely contemplated an orderly reduction of the 20 volumes of the Statutes at Large into one workable volume; no substantive changes were intended and no new legislation enacted beyond what was necessary to collect and redistribute. the statutes into titles, sections and chapters (7B Moore’s Fed Prac [2d ed], par 0-4). Consequently, the intention behind the grant of the original jurisdictional predicate must be deemed decisive. It should be noted that the present grant of original jurisdiction (US Code, tit 28, § 1343, subd [3]) does not itself imply exclusive jurisdiction because, except in a very limited number of situations set forth in the Federal constitution (art III, § 2), Federal courts lack jurisdiction over a case unless a statute grants it.
The seminal case construing the purposes of the 1871 Civil Rights Act is Monroe v Pape (365 US 167, supra) where it was held that the act was designed to override certain State laws, provide a remedy where State law was inadequate, provide a remedy where State law was adequate in theory but not in practice, and constitutes a Federal remedy supplementary to any the State may afford. Since section 1983 is supplementary to State remedies even where the latter appear adequate (Egan v City of Aurrora, 365 US 514), Federal jurisdiction is primary, and may be invoked without first exhausting (or resorting to) State judicial remedies (McNesse v Board of Educ., 373 US 668; Antieau, Federal Civil Rights Acts, § 82) or State administrative remedies (Damico v California, 389 US 416; see Houghton v Shafer, 392 US 639; Ann. 43 L Ed 2d 833, 856-858, Civil Rights-§ 1983 Actions).
Within the framework of federalism, comity exists between State and Federal courts in areas of concurrent jurisdiction, and plaintiff’s election of a tribunal is usually decisive (21 CJS, Courts, §§ 527-529; Antieau, Federal Civil Rights Acts, § 82 [1976 Supp, p 128]; Note, 75 Yale LJ 1007). Section 1983 claims can overlap with State common-law remedies and plaintiffs must weigh divergent factors in selecting the proper forum and proper remedy since dual recovery is barred (15 *11 Am Jur, Trials, §§ 555, 593, 617-619; 3A Jur, Trials, §§ 637, 647). Clearly, Congress by enactment of section 1983 did not intend to pre-empt the civil rights field; the statute merely supplements existing State remedies, and, of course, private civil rights remedies created by the States may coexist with the Federal (Monroe v Pape, supra; 3 Sutherland, Statutory Construction [4th ed], § 72.03; Ann., 171 ALR 920, Civil Rights Statute — Private Remedies; Ann., 53 ALR 188, Civil Rights— Private Right of Action; 14 CJS Supp, Civil Rights, § 203 et seq.; McKinney’s Cons Laws of NY, Book 1, Statutes, § 375; see New York legislation: Civil Rights Law, art 2-A, § 18-a et seq.; art 4, § 40 et seq.; art 4-B [L 1976, ch 469]; Executive Law, § 290 et seq. [Human Rights Law]; Civil Service Law, §§ 54, 55; NY Const, art 1, § 11; 22 NYCRR 25.17, 25.18, 25.40; cf. State Div. of Human Rights v County of Monroe, 88 Misc 2d 16).
The United States Supreme Court in a series of opinions has intimated that Federal jurisdiction is exclusive. In Hague v C.I.O. (307 US 496), the court held that the right to sue in Federal court upon a claim under the Civil Rights Act of 1871 (then US Code, tit 8, § 43) did not depend upon allegation of a jurisdictional amount as required in most other cases (now US Code, tit 28, § 1331, subd a). Mr. Justice Stone (later Chief Justice) in a concurring opinion noted that if the requisite jurisdictional amount had to be pleaded, then “a large proportion of the suits authorized by the Civil Rights Act cannot be maintained in any court” (supra, p 530); which implies that only the Federal courts have jurisdiction, and by interposing a monetary "jurisdictional requirement, many of the civil rights claims could not be heard in any judicial forum (see, also, Lynch v Household Fin. Corp., 405 US 538). In Monroe v Pape (365 US 167, 180, supra), the court stated that section 1983 was designed to “afford a federal right in federal courts”; a statement reiterated by other Federal courts (see, e.g., Birnbaum v Russell, 371 F2d 672, 676; Beauregard v Wingard, 230 F Supp 167, 185 [“plaintiff can have no action in State court which is a counterpart to the one before us, for Section 1983 created an entirely new right, federal in origin, and cognizable only in a court of the United States”]). In McNesse v Board of Educ. (373 US 668, 672) the court again noted that the purpose of section 1983 was to “provide a remedy in the federal courts”. In Mitchum v Foster (407 US 225, 242) the court observed that the “very purpose of § 1983 was to inter *12 pose the federal courts between the State and the people, as guardians of the people’s federal rights”.
As recently as 1972 the United States Supreme Court traced the historical background of section 1983 in determining that it did not include the District of Columbia within its ambit (District of Columbia v Carter, 409 US 418). The court there noted that "any analysis of the purposes and scope of § 1983 must take cognizance of the events and passions of the time at which it was enacted” (supra, p 425). The court further observed that perusal of the Congressional debates established that Congress believed the Federal courts must be given power (this, prior to general Federal question jurisdiction) to intercede and rectify the States’ inability or unwillingness to redress unconstitutional activity. "The solution chosen was to involve the federal judiciary” because "in the final analysis, § 1 of the 1871 Act may be viewed as an effort 'to afford a federal right in federal courts’ ” (supra, pp 427, 428). In a telling footnote the court stated (supra, p 428, n 22): "Thus, as originally enacted, § 1 of the 1871 Act provided that the proceedings authorized by the Act are 'to be prosecuted in the several district or circuit courts of the United States * * *’17 Stat. 13. This aspect of § 1 is now codiñed as 28 U.S.C. § 1343(3). ” (Emphasis added.) To "codify” means to reduce or arrange into a systematic order by legislative authority (Black’s Law Dictionary [4th ed], p 324; Webster’s Third New International Dictionary, p 438). Thus, the last-quoted sentence above indicates that the United States Supreme Court believes that jurisdiction of section 1983 claims relates back to the original grant thereof.
Nevertheless, there is authority for the view that section 1983 claims are cognizable in State courts (14 CJS Supp, Civil Rights, § 92; 2a PIADD, Civil Rights, §§ 1.02, 2.02). One noted commentator states that such actions are "rare”, but permissible (Antieau, Federal Civil Rights Acts, § 31, p 49; ibid., § 82.1 [1976 Supp, p 129]); while another commentator writing in 1969 could say that "no case has been found in which a state court granted relief under the [1983] section” (Note, 82 Harv L Rev 1486, 1497, n 62) and opined that plaintiffs be left to traditional adequate State remedies before a section 1983 claim is cognizable in any court (ibid.; see Paul v Davis, — US -, 96 S Ct 1155); and another commentator urges that section 1983 claims are exclusively within the Federal domain for reasons of national policy (Note, 70 Harv L Rev 509, 512). *13 The views of the few sister-State and Federal court decisions in point may be divided into three categories: (1) State court ousted from exercising jurisdiction (Chamberlain v Brown, 223 Tenn 25, supra; Backus v Chilivis, 236 Ga 500 [Ga] [ruling limited to real property tax claims]; see Moore v Fields, 464 F2d 549; (2) jurisdiction with State courts is concurrent (Commonwealth ex rel. Saunders v Creamer, 464 Pa 2; Brown v Pitchess, 13 Cal 3d 518, supra; Williams v Horvath, 16 Cal 3d 834; Alberty v Daniel, 25 ILL App 3d 291; Dudley v Bell, 50 Mich App 678; Silvermann v University of Colorado, 36 Col App 269; International Prisoners’ Union v Rizzo, 356 F Supp 806; and (3) jurisdiction entertained without reaching the issue and claim dismissed on the merits (Lakewood Homes v Board of Adjustment, 23 Ohio Misc 211; 52 Ohio Opns 2d 213, affd in part and revd in part 25 Ohio App 2d 125; 54 Ohio Opns 2d 306; New Times v Arizona Bd. of Regents, 20 Ariz App 422, vacated 110 Ariz 367). Yet, a careful reading of these decisions indicates that only two courts have fully developed the issues by review of Congressional intention and historical background (Chamberlain v Brown, supra; Brown v Pitchess, supra); and they reached diametrically opposite conclusions.
In Brown the California Supreme Court correctly noted that the presumption of a Federal grant of jurisdiction is concurrent and rejected as "dire prophecy” (13 Cal 3d 518, supra), and beside the point the argument of a great influx of section 1983 claims in State court, holding that the original jurisdictional language meant concurrent and not exclusive because Congress had previously and subsequently used the word "exclusive” in giving Federal courts jurisdiction of civil rights crimes (14 US Stat 27, Civil Rights Act of 1866; 18 US Stat 335, 336, Civil Rights Act of 1875). However, to rest decision on the latter ground seems, at best, tenuous, since Federal jurisdiction over Federal crimes was always considered exclusive except in a few exceptional cases involving fines and forfeitures (7B Moore’s Fed Prac [2d ed], par 85-1; ibid., vol 1, par 0.60 [7]; Testa v Katt, 330 US 386, 390, n 5, supra; Warren, Federal Criminal Laws & State. Courts, 38 Harv L Rev 545), as it is today (US Code, tit 18, § 3231). The analogy to civil cases is, therefore, incomplete. Indeed, if any conclusion can be gleaned from the 1866 legislation from which section 1983 is derived, it is that the doctrine of noscitur a sociis may be deemed applicable, which supports the argument for exclusive jurisdiction.
*14 In Chamberlain the Tennessee Supreme Court held, after a review of the Congressional debates, that State courts were ousted from jurisdiction over section 1983 claims. Reference was made of the remarks by Mr. Kerr of Indiana where he stated that the section provides "a civil action for damages against the wrongdoer in Federal courts” and of Senator Thurman of Ohio in the same vein (442 SW2d 248, 251-252, supra). The court also considered the construction placed upon the section by the United States Supreme Court, specifically noting that the remedy is supplementary to any State remedy and that the exhaustion principle is abrogated. The court concluded (p 252): "In view of the historical examination given R.S. § 1979 by the United States Supreme Court, and in light of the interpretation given that section, it would be illogical indeed to hold that a State court should enforce, or is required to enforce, an alleged cause of action which owes its very existence to congressional recognition of reluctance or refusal of State courts to act.”
Plaintiff points out that four cases in this State have entertained section 1983 claims (Seaman v Fedourich, 16 NY2d 94; Clark v Bond Stores, 41 AD2d 620; Judo, Inc. v Peet, 68 Misc 2d 281; Kreiger v State of New York, 54 Misc 2d 583). However, in Seaman the Court of Appeals opinion establishes that it was adjudicating plaintiff’s State and Federal constitutional claims (cf. Wasservogel v Meyerowitz, 300 NY 125); and in Kreiger the Court of Claims did not consider the question (cf. James v Board of Educ., 37 NY2d 891, 894 [Fuchsberg, J., dissenting] [Ct Apps ROA No. 7196, Plaintiffs’ brief 22-24, Plaintiffs’ reply brief 6-7, urged that the claim in the amended complaint for tortious wrong could be converted into a section 1983 claim]).[3] In Clark, the Appellate Division, First Department, relied upon the presumption of concurrent jurisdiction, and in a memorandum opinion sustained jurisdiction in State court. In Judo, the Civil Court of the City of New York, which is not a court of unlimited jurisdiction, similarly relied upon the presumption of concurrent jurisdiction and, further, upon the opinion of the Court of Appeals in Seaman, in sustaining jurisdiction in that limited forum.
Two other New York cases have passed upon this question (Clemente v Little, NYLJ, Jan. 5, 1977, p 19, col 3; Holt v City of Troy, 78 Misc 2d 9). In Clemente the court observed, in *15 reliance upon Judo (supra), that State courts exercise concurrent jurisdiction over section 1983 claims, but dismissed the claim against the municipality. In Holt the court sustained a section 1983 claim against a police officer, primarily upon the rationale that absent diversity of citizenship the Federal courts could not enforce such a claim. However, insofar as the latter rationale is concerned, the overwhelming weight of Federal authority is that diversity, like the monetary jurisdictional requirement, is not a prerequisite to access to the Federal courts for redress of section 1983 violations (see US Code, tit 42, § 1933, cases cited Ann No. 762; Later Case Service, CLS, US Code, tit 42, § 1983, cases cited Ann No. 71), although the United States Supreme Court has not, as yet, specifically resolved the issue (cf. Scheuer v Rhodes, 416 US 232, 234, n 2; Collins v Hardyman, 341 US 651; Douglas v Jeanette, 319 US 156).
Finally, in Cox v City of New York (40 NY2d 966) the Court of Appeals upheld dismissal of a section 1983 claim for failure to state a cause of action, which was the only specific ground advanced in support of the motion to dismiss. The record on appeal (Ct App ROA No. 7442) reveals that plaintiff argued that State courts had subject matter jurisdiction while the respondents, through the Attorney-General, urged the converse. The latter issue was not discussed by the Court of Appeals.
None of the afore-mentioned New York decisions considered United States Supreme Court opinions construing section 1983 or the historical background thereof.
While practical considerations ordinarily play no role in determining issues of constitutional import, such factors ought not be entirely ignored in our attempt at ascertaining Congressional intention in this modern era of a litigiously sophisticated society. "There can be no wisdom in the choice of a path unless we know where it will lead” (Cardozo, The Nature of the Judicial Process, p 103). A realistic appraisal of the situation indicates that section 1983 produces an abnormal amount of the Federal caseload (Note, 82 Harv L Rev 1486, 1487 [approximately 700 pages of case citations exist as of this writing under the annotations to section 1983 at 42 US Code Annotated, § 1983],[4] that Federal courts are better equipped to *16 deal with enforcement of Federally created rights, thereby providing a measure of uniformity in adjudication than can ever be realized in State courts (Shaw v Garrison, 545 F2d 980; Chevigny, Section 1983 Jurisdiction: A Reply, 83 Harv L Rev 1352, 1356-1357; Note, 39 NYU L Rev 839, 849-855; cf. Note, 70 Harv L Rev 509, 511-512; 14 CJS Supp, Civil Rights, § 134 [Supp]).* ***[5] Furthermore, the potential damage recovery under section 1983 is governed by Federal common law and may include punitive damages and attorney’s fees (Antieau, Federal Civil Rights Act, §§ 76, 81; Ann., 14 ALR Fed 608, Civil Rights Acts — Punitive Damages; 14 CJS, Supp, Civil Rights, §§ 173-174; Nagata, Federal Powers & the 11th Amendment, 63 Cal L Rev 1167; but cf. 94 US Stat 559), items not necessarily recoverable under State common law. The *17 burden of proof on plaintiff is considerably lessened vis-á-vis traditional State law remedies (cf. Antieau, Federal Civil Rights Act, § 83) and consideration must be given to the diverse defenses and immunities carved out of section 1983 (Comment, 1967 Duke LJ 741; Ann 43 L Ed 2d 833, 844, Civil Rights — § 1983 Actions), which are governed by Federal law (Wood v Strickland, 420 US 308). Yet, plaintiff urges that this court is compelled to accept jurisdiction of this Federal claim, assume the burden of trying causes of action of Federal origin, incorporate into the State legal system alien concepts of jurisprudence that could wreck havoc upon orderly common-law disciplines, and inject into the State judicial system the potential for an onerous burden of a rapidly expanding caseload of civil rights claims that could not possibly be managed without substantial trial delay to equally meritorious State oriented actions in the absence of an increase in judicial manpower, the overall effect of which would necessarily lead to exacerbation of Federal-State court relationships. Plaintiff’s position appears untenable when it is recognized that an adequate State remedy exists, liability for tortious wrong.[6] As Mr. Chevigny observed in his law review article (83 Harv L Rev 1352, 1355, n 16), where adequate State remedies exist "practical considerations could adequately handle the allocation problem without any judicial hard line tests” being utilized, i.e., this suit could have been commenced in the Federal District Court, Southern District of New York, in the very county where plaintiff resides.
The courts of this State have, when necessary, expanded jurisdiction to the outer limit constitutionally permissible so as to afford a remedy in a ready and convenient judicial forum (see, e.g., Seider v Roth, 17 NY2d 111) and, when occasion required, have supplemented inadequate Federal remedies by creation of State causes of action (Diamond v Oreamano, 24 *18 NY2d 494), or incorporated into State jurisprudence Federal procedure where new substantive law is not involved (Jackson v Regional Tr. Serv., 54 AD2d 305).
Section 1983 represents a commendable effort at the national level to right certain wrongs inflicted upon our citizens under color of State law. The statute, as properly construed, was intended to afford aggrieved persons access to Federal tribunals. The remedy granted is unknown at common law, Federal in origin, and governed by Federal substantive principles. Reflected therein is an expression of social concern for the well-being of our inhabitants so that, notwithstanding State remedies or unwillingness or inability to correct wrongs inflicted under the guise of law, the Federal arena is made immediately available and accessible for just that purpose. It would be incongruous, to state the obvious, as the Tennessee Court observed in Chamberlain v Brown (223 Tenn 25, supra), to conclude that Congress meant for State courts to exercise concurrent jurisdiction over these newly created rights, which were born of necessity and with the express intention and purpose of bypassing the State judicial system. To hold, as California implicitly did in Brown v Pitchess (13 Cal 3d 518, supra), that section 1983 does not relieve State courts of their duty to protect the civil rights of their citizens (Comment, 16 Santa Clara L Rev 665) — a principle not disputed here as evidenced by the common-law remedies available — does not necessarily lead to the inescapable conclusion of concurrent jurisdiction.
Parenthetically, it might be noted that it has been the unvarying practice, over the past several years, for the Justice presiding at the Special Term at the Green Haven Correctional Facility in Dutchess County, to refer all prisioner petitions involving Federal civil rights claims to the Federal District Court, Southern District, New York, none of which have been refused.
Nonetheless, this court has the awesome responsibility of construing legislative intent of a national statute enacted over 100 years ago. Yet, even in the civil rights area, usual modes of statutory interpretation apply, that is, while legislative intent remains paramount, the statute which creates a new right unknown at common law is to be strictly construed, interpreted to avoid absurdity, and not extended beyond the objects to be served (Gibbs v Anas Bros., 222 NY 332; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 145, 301; cf. 3 *19 Sutherland, Statutory Construction [4th ed], § 72.05). Thus, the court has explored traditional methods of statutory interpretation, making explicit reference to historical background and Congressional debates (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 124-125). In very simple terms, all that is involved is construction of a statute and application of the general rule "that where a right not existing at common law is given by a statute, and a remedy for the enforcement of the right prescribed, the right can be enforced only through the statutory remedy” (Matter of Torge v Village of Salamanca, 176 NY 324, 330). At first blush, therefore, analysis of the scope, policy, purposes, history, objects to be served, etc., of the instant statute reveals that the original grant of jurisdiction "in the several district or circuit courts of the United States” strongly implies that exclusive jurisdiction over the subject matter rests solely in the Federal courts (Dudley v Mayhew, 3 NY 9, supra). However, in ascertaining intent behind Federal statutes, the court must be guided by United States Supreme Court pronouncements and, if the issue has not been decided at that level, look to lower Federal court expressions of opinion (McKinney’s Cons Laws of NY, Book 1, Statutes, § 261), the latter being divided on the question raised.
If the only United States Supreme Court decisions tangentially in point were Monroe (365 US 167, supra) and its progeny, McNeese v Board of Educ. (373 US 668, supra), Mitchum v Foster (407 US 225, supra), District of Columbia v Carter (409 US 418, supra) and the earlier concurring opinion of Mr. Justice Stone in Hague v C.I.O. (307 US 496, supra), this court would be inclined to the view that Federal jurisdiction is exclusive and the reasoning of other courts at nisi prius could properly be disregarded (Montrose v Baggott, 161 App Div 494, app dsmd 220 NY 686).
However, on June 24, 1976, the United States Supreme Court apparently resolved the jurisdictional question (Aldinger v Howard, — US —, 96 S Ct 2413). In the cited case, the court was called upon to determine the jurisdictional basis pursuant to title 28 (§ 1343, subd 3), of State law claims in the Federal courts where such claims were coupled with causes of action under section 1983, the latter having been dismissed for lack of jurisdiction. The precise question posed was whether the Federal courts could take cognizance of State law claims over a party not otherwise susceptible to Federal jurisdiction *20 under the circumstances described above. By a 6 to 3 decision, the court answered in the negative. In so concluding, Mr. Justice Rehnquist, speaking for the- majority, noted that so-called "pendent” jurisdiction of State law claims might have to be accepted by Federal courts under other circumstances, where, for example, "the grant of jurisdiction to a federal court is exclusive” (p -). Mr. Justice Brennan, authored the dissent, and in a footnote, observed (— US-,-, 17, 96 S Ct 2413, 2430, n 17): "The court today appears to decide sub silentio a hitherto unresolved question by implying that § 1983 claims are not claims exclusively cognizable in federal court but may also be entertained by state courts. See ante, at -. This is a conclusion with which I agree.”
Admittedly, the dicta used by the majority implies the conclusion noted by Mr. Justice Brennan and while it may seem anomalous that such an important question would be resolved sub silentio, the import of Aldinger may not be ignored. Accordingly, the court is constrained to find that Federal jurisdiction is not exclusive and that the State Supreme Court has the competence to entertain section 1983 claims. Stated differently, unless and until the United States Supreme Court determines otherwise, there is no legal barrier to presentation of section 1983 claims in the Supreme Court of this State.
SIMILAR PENDING ACTION
The second facet of defendant’s lack of subject matter contention, that the State is the real party in interest, and only the Court of Claims could entertain jurisdiction, will be discussed post since it overlaps with defendant’s argument that no cause of action is stated.
The within application also presents an argument for dismissal on the ground that another cause of action between the same parties is pending (CPLR 3211, subd [a], par 4), which must be rejected since the same parties and same causes of action are not directly involved in the twin proceedings (Kent Dev. v Liccione, 37 NY2d 899; cf. Olmstead v Britton, 48 AD2d 536). Moreover, even if the court determined that the causes of action are similar and the parties, indirectly, are the same, then, absent considerations concerning lawsuits against the sovereign, discussed infra, this portion of the motion would still require denial upon the authority of Neulist v County of Nassau (50 AD2d 803). In short, there is no forfeiture of the *21 right to simultaneously pursue State and Federal remedies on a civil rights claim.
FAILURE TO STATE A CAUSE OF ACTION
The third branch of defendant’s motion, to dismiss for failure to state a cause of action (CPLR 3211, subd [a], par 7), raises issues as subtle and complex as discussed under the first branch of the motion. The question is whether plaintiff has a Federal civil rights cause of action.
On a motion to dismiss a civil rights claim, the pleadings are liberally construed and the allegations deemed true (Cooper v Pate, 378 US 546). Viewing the complaint as a whole, plaintiff is claiming violation of his Federally potected right to be free from unnecessary force in the course of an arrest (Antieau, Federal Civil Rights Act, § 47; Comment, 1967 Duke LJ 741, 797-805). Obviously, physical integrity is a right protected by the Fifth and Fourteenth Amendments to the Federal Constitution; but in the context presented, only use of excessive force leading to severe personal injury or death have been adjudged within the ambit of section 1983 (Antieau, Federal Civil Rights Act, §§ 54, 62 [1976 Supp, pp 71, 86], § 75; 15 Am Jur, Trials, §§ 555, 610-611; Ann., 1 ALR Fed 519, 528-529, Civil Rights Act — Police Action; see Belcher v Stengal, — US-, USLW 4029; Williams v United States, 341 US 97; Screws v United States, 325 US 91; Hamilton v Chaffin, 506 F2d 904). While it is true that other alleged constitutional violations committed by police officers are encompassed by section 1983 (Monroe v Pape, 365 US 167, supra [4th Amdt violations]), it was never congressional intention to convert the instant constitutional claims, predicated upon section 1983, into "a font of tort law to be superimposed upon whatever systems may already be administered by the States” (Paul v Davis, — US-,-, 96 S Ct 1155, 1160 [injury to reputation]; Note, 43 Brooklyn L Rev 147; see, also, Rizzo v Goode, — US-, 96 S Ct 598). "Mere tortious conduct does not constitute a deprivation of constitutional rights under the statute” (Gonyaw v Gray, 361 F Supp 366, 368). Stated differently, grievances easily remedied under traditional State law concepts should not be the subject of national concern (Ann 43 L Ed 2d 833, 843, Civil Rights— § 1983 Claims). While police officers may be civilly liable for unconstitutional acts "not every tort committed against a private person by an official under state law rises to the deprivation of a constitutional *22 right” (Jones v Marshall, 528 F2d 132, 137; see Navarette v Enomoto, 536 F2d 277, 281). In sum, absent severe personal injury, simple assaults are not within the ambit of section 1983, and the insertion of language in the complaint to give the "appearance of a suit under the civil rights acts” will not defeat a motion to dismiss (Dinwiddie v Brown, 230 F2d 465, 469, cert den 351 US 971). In a similar situation involving the use of alleged excessive force on a prisoner, the Court of Appeals for the Second Circuit recently noted that not every act of force violates a person’s constitutional rights, and: "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether the force was applied in a good faith effort * * * or maliciously and sadistically for the very purpose of causing harm” (Johnson v Glick, 481 F2d 1028, 1033, cert den 414 US 1033).
Exercise of good faith under State legal standards remains a viable defense (O’Connor v Donaldson, 422 US 563) for it was never intended that section 1983 be used as a whip to discipline local law enforcement officers (14 CJS, Civil Rights, § 141 [Supp]; see Comment, 46 Col L Rev 614).
In the companion action in the Court of Claims, plaintiff was requested to specify his "physical injuries” in a bill of particulars. Plaintiff filed his bill of particulars and stated that the request was "inapplicable”. At bar, plaintiff makes no pretense of the fact that no physical injury occurred. Futhermore, he has failed to submit any supporting affidavits from his wife or maid who purportedly witnessed some of the salient events in question.
A motion for summary judgment searches the record and the parties are required to lay bare their proof (4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.05). Mere repetition of allegations contained in the pleadings, as plaintiff has done, is insufficient (Indig v Finkelstein, 23 NY2d 728). Plaintiff has failed in sustaining his burden of proof and thus falls squarely within the rationale of Paul v Davis (— US -, 96 S Ct 1155), to wit: that where, as here, the interest sought to be vindicated is not encompassed within section 1983 as exemplified in Johnson v Glick (481 F2d 1028, cert den 414 US 1033, supra) the plaintiff must resort to traditional State legal remedies (— US —, -, 96 S Ct 1155, 1166). Thus, it is *23 concluded that the within claim fails to state a cause of action (Cox v City of New York, 40 NY2d 966, supra).
One further point merits discussion, and that is, whether the State, is the real party in interest.
It should be noted that a section 1983 claim does not lie against a State or municipality (City of Kenusha v Bruno, 412 US 507; Moore v County of Alameda, 411 US 693, reh den 412 US 963; Fear v Commonwealth of Pennsylvania, 413 F2d 88, cert den 396 US 935; Williford v California, 352 F2d 474; Hirych v State, 376 Mich 384; Antieau, Federal Civil Rights Acts, § 37). Similarly, upon the theory that one cannot obtain relief indirectly that is not obtainable directly, and to avoid direct collision with the Eleventh Amendment[7] to the Federal Constitution, section 1983 monetary claims are not sustainable against State public officials where the award will be paid out of the State treasury (Edelman v Jordan, 415 US 651, reh den 416 US 1000; Ford Co. v Department of Treasury, 323 US 459; Rothstein v Wyman, 467 F2d 226, cert den 411 US 921, reh den 411 US 988; Sostre v McGinnis, 442 F2d 178, cert den sub nom. Sostre v Oswald, 404 US 1049, 405 US 978; Needleman v Bohlen, 386 F Supp 741). In Edelman the Supreme Court stated (415 US 651, 663, supra):
"It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment * * *
"Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.”
The court further noted that waiver of sovereign immunity is not waiver of the shield of the Eleventh Amendment on Federal claims (p 677, n 19). Clearly, "[a] claim for damages asserted against a state officer in his official capacity, is, in effect, an action against the State, which is barred by the Eleventh Amendment” (Conosta v Vermont Elec. Co-op., 400 F Supp 358, 361).
However, where the State is not named as a party and the pleadings reveal that the claim against the named State officer is to impose personal liability, the Eleventh Amend *24 ment is not a bar to the assertion of the claim (Scheuer v Rhodes, 416 US 232). "[I]t has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law” (supra, p 237). Thus, some courts have indicated that confrontation with the Eleventh Amendment is avoided by framing an order imposing personal liability (Thonen v Jenkins, 517 F2d 3; Collins v Schoonfeld, 363 F Supp 1152; see Rothstein v Wyman, 467 F2d 226, supra; 14 CJS, Supp, Civil Rights, § 172).
Since subdivision 1 of section 17 of the Public Officers Law is a form of immunity, it is governed by analysis of both State and Federal law to determine if it can pass muster upon a section 1983 challenge (Imbler v Pachtman, 424 US 409; Wood v Strickland, 420 US 308). Under Federal law, if the State statute is viable, two additional inquiries must be answered to determine who is the real party in interest: (1) who has the power to satisfy the judgment (Idaho Potato Comm. v Washington Potato Comm., 410 F Supp 171; Morris v Board of Educ., 401 F Supp 188); and (2) does the record establish (perhaps after a hearing, if necessary), that the individual defendant acted outside the scope of employment or in an arbitrary manner? (Monell v Department of Social Serv. of City of N. Y., 532 F2d 259, 264-266; Greenlow v California Dept. of Benefit Payments, 413 F Supp 420, 425-426.) The focus of the latter twin inquiries are directed towards the individual defendant’s status in the case, to wit: whether he is sued in his official or personal capacity; if the former, the Eleventh Amendment bars the action even were the statute construed to provide for indemnification only (Antieau, Federal Civil Rights Acts, § 37.1 [1976 Supp, pp 49-50]) and, if the latter, a Federal cause of action (and Federal subject matter jurisdiction) exists.
Thus, the purposes underlying subdivision 1 of section 17 of the Public Officers Law and the thrust of the instant pleadings must be examined. The cited statute provides in pertinent part: "The state shall save harmless and indemnify all officers and employees of the state from financial loss arising out of any claim * * * by reason of alleged negligence or other act by such officer or employee provided that such officer or employee at the time damages were sustained was acting in the discharge of his duties and within the scope of his employment and that such damages did not result from the wilful *25 and wrongful act or gross negligence of such officer or employee”.
The quoted section was enacted in 1971 (L 1971, ch 1104) and merely codified prior diverse legislation (Note, 1971 McKinney’s Session Laws of NY, pp 1948-1949).[8] A memorandum in support of the bill was issued by the Attorney-General (annexed to appendix at p A-l in record on appeal in Olmstead v Britton, 48 AD2d 536, ROA No. 2258) wherein it was indicated that the purpose of the new legislation was to provide uniform indemnity to all State officers and employees. In a series of rulings the Attorney-General has extended the statutory protection to other persons who might be said to be on State business (1975 Opns Atty Gen 59, 78; 1974 Opns Atty Gen 18). Similar legislation still exists in other statutes (see, e.g., Executive Law, § 501-a [foster parents]; Public Health Law, § 14-a [volunteers of department]; Court of Claims Act, § 8-a, subd 2 [employees of State militia]; Civil Rights Law, § 79-f [volunteer aiding policeman]; see, in general, 48 NY Jur, Public Officers and Employees, § 123).
Nonetheless, the Legislature is perfectly capable of enacting legislation providing for indemnification while directing that the suit not lie against the officer but be made against the State in the Court of Claims (Mental Hygiene Law, § 81.08, subds [b], [c]; see former Correction Law, § 6-b). It may seem redundant to provide for indemnity where the suit is in fact against the State, but even under such a statute (former Public Health Law, § 14, subd 2) at least one court permitted a suit to lie in the Supreme Court against the officer (Clark v Cannizzaro, 37 AD2d 634).
It had been intimated in some cases that if an indemnification statute existed, the real party in interest would be the State, and the suit could be heard only in the Court of Claims (Bernhard v Faulds, 47 Misc 2d 286; see Matter of Ross v Barbaro, 61 Misc 2d 147; 55 NY Jur, State of New York, § 200). To determine if the State is the real party in interest under State law, it is immaterial if plaintiff lacks another remedy, the test being the nature of the litigation, the relief *26 sought, and the way it affects the State (Glassman v Glassman, 309 NY 436). Preindemnification statute cases have held that a State officer may be sued in the Supreme Court rather than the Court of Claims where the allegations are for personal misconduct (Erie R. R. Co. v Sells, 298 NY 58, 61; New York State Thruway Auth. v Hurd, 29 AD2d 157; cf. Adler, Inc. v Noyes, 285 NY 34, 37). One postindemnification statute case, involving subdivision 2 of section 8-a of the Court of Claims Act which is similar to subdivision 1 of section 17 of the Public Officers Law, held that the claim is, in reality, against the State and may only be asserted in the Court of Claims (Perry v Murray, 78 Misc 2d 942). Three other decisions involving the very statute at bar have held that prior law is not abrogated, the statute merely creates a right to claim indemnification, and the officers may be sued in Supreme Court (Olmstead v Britton, 48 AD2d 536; DeVivo v Grosjean, 48 AD2d 158 [where Perry v Murray, supra, was cited on appeal, ROA No. 2752]; Sutton v Coulter, 78 Misc 2d 730). This result appears consistent with the legislative purpose of consolidating prior sundry statutes. As noted earlier, if the Legislature desired to make such claims suable only in the Court of Claims, it could, as it had in other areas, done so. Additionally, similar provisions regarding non-State officers or employees, if construed in accord with defendant’s position, would extend the statute beyond its obvious import.
Yet, the Assistant Attorney-General states that "the State will indemnify and save harmless defendant from any financial loss arising out of a lawsuit” under the circumstances set forth in this complaint, thereby making the State the real party in interest. Plaintiff urges that the allegations will prove that defendant’s acts are outside the scope of subdivision 1 of section 17 of the Public Officers Law, thereby not requiring disbursement of State funds (cf. Davis, Suing the Government by Falsely Pretending to Sue an Officer, 29 U Chicago L Rev 435).
Analysis of the pleadings indicate that plaintiff is seeking to impose personal liability upon defendant in this case for alleged arbitrary conduct that occurred in the course of employment, and is not looking to the State. Yet, the respective positions of the parties regarding the potential for indemnification are somewhat tenuous because, in reality, a reasoned judgment thereon cannot be made until after trial and deter *27 mination on liability, by special verdict if necessary. Nonetheless, plaintiff argues that application of the indemnification statute is in violation of the supremacy clause of the Federal Constitution (art IV, § 2). This court cannot agree. None of the necessary elements to sustain pre-emption exist in the context presented (for a full discussion of the doctrine see Matter of Marino v Town of Ramapo, 68 Misc 2d 44, 57-60). Pursuant to section 5 of the Fourteenth Amendment, the enforcement provision, Congress could have enacted legislation overriding the Eleventh Amendment (Fitzpatrick v Bitzer, 427 US 445, but cf. Oregon v Mitchell, 400 US 112, 128; see Comment, 1967 Duke LJ 741, 802, n 274; Note, 75 Yale LJ 1007, 1046, n 200), but in this area has not chosen to do so. That does not mean that the States may, as attempted in Scheuer v Rhodes (416 US 232, supra; see, also, Hampton v City of Chicago, 484 F2d 602, cert den 415 US 917), erect immutable boundaries of immunity for official action, for public officials including police officers are not wholly insulated from section 1983 liability (Monroe v Pape, 365 US 167, supra; Stengel v Belcher, 522 F2d 438, cert granted 425 US 910; Caperci v Huntoon, 397 F2d 799, cert den 393 US 940; Ann., 1 ALR Fed 519, Civil Rights Act — Police Action). However, here, unlike the situation in Scheuer, the State has not created an absolute immunity from liability for official action; rather, it is merely providing a fund for recompense provided that it (or the official) be sued in State courts under traditional State remedies. The obvious rationale behind section 17 of the Public Officers Law, and statutes of its ilk, is to insure State employees of a legal defense and monetary fund to pay judgments for actions taken in the ordinary course of their employment. The legislation clearly bears a rational relationship toward the objects to be attained, that is, to induce capable persons into government service and enable them to perform their functions free of the potential for financial loss suffered as a result of their job related pursuits (Scheuer v Rhodes, 416 US 232, 239-240, supra; Comment, 46 Col L Rev 614). The statute does not constitute the erection of an impenetrable barrier to judicial review for, as noted, aggrieved persons have available the full panoply of traditional common and State law remedies. Consequently, if subdivision 1 of section 17 of the Public Officers Law actually applies, a fact that cannot be ascertained until final disposition on the mer *28 its,[9] the court would conclude that upon the instant claim (and solely within the meaning of section 1983) the State is the real party in interest, and by virtue of the Eleventh Amendment no cause of action exists in any court of this State. This is so because, by a parity of reasoning, while the Eleventh Amendment in itself is not applicable in State courts, since no Federal cause of action could exist in Federal court, none can be brought in State court. To the extent that New York statutory law (Public Officers Law, § 17), may be read as offending Congressional intent as embodied in section 1983 of title 42 of the United States Code, plaintiff’s avenue of relief is to petition Congress, not the courts, as the State legislation merely implements the public policy contained in the Eleventh Amendment (cf. Wood v Strickland, 420 US 308; 1A Sutherland, Statutory Construction [4th ed], § 23.21; Schwartz, Constitutional Law, § 165, p 322).
CONCLUSION
In conclusion, the court holds upon the authority of Aldinger v Howard (427 US 1) that the State Supreme Court has concurrent jurisdiction with Federal courts over section 1983 claims, but summary judgment is granted to defendant, on the law and the facts, upon the ground that plaintiff lacks a section 1983 cause of action. For the purpose of completeness, the court also discussed the potential bar of the Eleventh Amendment to the Federal Constitution. Leave to replead is not being granted because plaintiff failed to request such relief (Division of Triple T Serv. v Mobil Oil Corp., 60 Misc 2d 720, 732, affd 34 AD2d 618, mot for lv to app den 26 NY2d 614, mot for stay den 26 NY2d 1020) and, further, even if such permission were granted, plaintiff could not cure the defect herein by presenting another civil rights claim, but would, rather, have to assert a new claim for assualt, etc., similar to the one pending in the Court of Claims, which might be susceptible to a new motion to dismiss (CPLR 3211, subd [a], par 4). In sum, plaintiff can *29 have his day in court in the forum first chosen, the Court of Claims.
Submit judgment on notice.

. No statute of limitations questions are presented since, even if our one-year statute were deemed applicable (CPLR 215, subds 1, 3), the action was timely commenced (cf. NY Const, art III, § 19; Court of Claims Act, § 12, subd 2; CPLR 213, subd 1; see Regan v Sullivan, 417 F Supp 399; Ann., 98 ALR2d 1160, Civil Rights Act —Limitations Statute; Note, 39 NYU L Rev 839, 851-852). However, it is possible to sever the gravamen of the complaint into separate components of (1) assault and battery, and (2) negligence involving the use of a motor vehicle. If the complaint states a cause of action under the civil rights act, the question may arise whether our comparative negligence statute (CPLR 1411) and "no-fault” insurance requirements (Insurance Law, § 670 et seq.) apply to the negligence aspects of the case. These esoteric issues have not been raised by the parties and the court merely notes their existence as adjunct facets of the civil rights claim and the potential for mischief that can occur upon incorporation of Federal substantive law into the.State’s jurisprudence.

. The present section (US Code, tit 28, § 1343, subd [3]), insofar as relevant, provides: "The district courts shall have original jurisdiction of any civil action * * * (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States”.

. All references to records on appeal are to the records maintained by the Supreme Court Library in White Plains.

. Civil rights actions constitute the third largest civil category in number of cases commenced during fiscal 1976 in the United States District Courts (The United States Courts, A Pictorial Summary 1976, Administrative Office of the US Courts, p 3). If the *16 number of prisoner petitions involving civil rights were included in the above category, it would rank second only to contract actions in new filings (ibid.). In 1976 the Director of the Administrative Office of the United States Courts reported: "Civil rights suits filed in federal district courts continue their upward trend. With a 19 percent increase over last year, these cases accounted for more than 9 percent of the civil filings in the past 12 months”, and, "During this period there were 12,329 civil rights cases filed compared to 10,392 in the previous year * * * Since 1971, these cases have grown 140%” (1976 Annual Report of the Director, Administrative Office of the U. S. Courts, pp 4, 79). At the end of fiscal 1976, civil rights cases ranked second in the number of pending cases, exceeding motor vehicle personal injury actions (traditionally the largest pending caseload in our State courts) by nearly 100% (id., p 86, table 19). In excess of 33-16% of all prisoner petitions filed in 1976 involved claims under the civil rights statutes (id., p 94, table 24). It is also interesting to note that civil rights litigation in nonjury cases represented 20.5% of the total and, of these, 9.5% took four or more days to try to conclusion. In many respects, section 1983 is regarded as a panacea by aggrieved persons, and litigation thereunder covers the wide spectrum of all real or imagined societal ills such as abortion, attachment, education, housing, licensing procedures, mental committments, prisoner conditions, taxes, voting, zoning, etc. (id., p 116, table 37; Ann 43 L Ed 2d 833, 850-855, Civil Rights — § 1983 Claims). Recognizing the import of the above statistics, it cannot be seriously disputed that acceptance of jurisdiction of section 1983 claims would inundate our court system, add years of waiting time to our already congested trial calendars, and create an influx of new filings of highly complex matters which might have the side effect of abrogating our traditional State law remedies (i.e., CPLR art 78 proceedings, actions for declaratory judgments, etc.).

. Res judicata and collateral estoppel issues arise and the present state of the law appears to be that litigation to the merits in one forum may not preclude presentation of a similar claim in another forum in a civil rights context (Antieau, Federal Civil Rights Acts, § 83, p 110). Additionally, it is not clear whether the parties are entitled to a jury trial in a civil rights case for money damages (cf. Antieau, Federal Civil Rights Acts, §§ 83.01, 83.1 [1976 Supp, pp 132-133]; 42 USCA, § 1983, Ann No. 644 [cases cited]). Of course, no jury trial is permitted in the Court of Claims (NY Const, art 6, § 18, subd b; Court of Claims Act, § 12, subd 3), but the parties could demand trial by jury in the ordinary tort case in Supreme Court (Jones v Young, 257 App Div 563).

. In essence, the gist of the instant complaint is, as noted in footnote 1 (supra) for assault, battery and negligence, acts for which the State may be vicariously liable under common-law doctrines (Jones v State of New York, 33 NY2d 275; Egan v State of New York, 255 App Div 825; Winant v State of New York, 33 Misc 2d 990; 55 NY Jur, State of New York, § 202; 1 NY PJI 2d 510-513; 2 NY PJI 3:45 pp 510-513; 2 PJI 3:45). Whether punitive damages are recoverable against the State remains an open question (cf. Borkowski v Borkowski, 39 NY2d 982; Kieninger v City of New York, 53 AD2d 602; Snyder v State of New York, 20 AD2d 827; Hayes v State of New York, 80 Misc 2d 498; 14 NY Jur, Damages, § 184; 1 NY PJI 2d 624). Plaintiff has presented such claims against the State in the Court of Claims; and, of course, the complaint herein may be deemed to include a cause of action for punitive damages (Knibbs v Wagner, 14 AD2d 987).

. The Eleventh Amendment states: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State”.

. Statutes directly affected include provisions enacted in the 1940’s and 1950’s: Correction Law, § 24 (formerly § 6-b, L 1947, ch 367, ren § 24, L 1970, ch 475, and reenacted after Public Officers Law, § 17, as new § 24); see, also, Correction Law, § 24-a); Public Health Law, § 14 (L 1953, ch 879); Education Law, § 362 (L 1959, ch 596); Civil Service Law, former § 10 (L 1964, ch 391); Labor Law, former § 18a (L 1969, ch 56); Executive Law, § 229 (L 1969, ch 339).

. If plaintiff were accorded a trial and prevailed, and, further, if the State paid the judgment by operation of statutory mandate, public funds have been expended and the Eleventh Amendment bars the action. It seems absurd to require the State to expend moneys in preparation for what might, in effect, be a futile trial with a worthless judgment, expecially since alternative remedies are available. These observations reveal how foolish it is to pursue relief in this fashion.