JAMES R. CHAMBERLAIN et al., Petitioners,

*v.*

SCOTT N. BROWN, Respondent.

442 S.W.2d 248.

(*Knoxville*, September Term, 1968.)

Opinion filed March 7, 1969.

Opinion on Petition to Rehear Denied June 13, 1969.

BOMAR, SHOFNER, BOMAR & IRION, Shelbyville, and BISHOP, THOMAS, LEITNER, MANN & MILBURN, Chattanooga, for petitioners.

JOHN S. WRINKLE, Chattanooga, for respondent.

Mr. Justice Creson delivered the opinion of the Court.

This cause comes to this Court by petition for writ of certiorari heretofore granted. The case presents questions concerning the jurisdiction of the courts of Tennessee to entertain cases predicated upon the Civil Rights Acts, particularly 42 U.S.C.A. secs. 1983, 1985(3).

Hereinafter, the litigants will be referred to as they appeared in the trial court; that is, Scott N. Brown as plaintiff and James R. Chamberlain, et al. as defendants.

This case was originally filed in the Circuit Court of Hamilton County, Division 3. The thrust of the declaration is that the defendants, members of the Tennessee Real Estate Commission, conspired to prevent plaintiff from pursuing his vocation as a real estate broker, arbitrarily and unjustly refused to renew plaintiff's license, and thus deprived plaintiff, under color of state law, of his vocation and livelihood. Plaintiff seeks both compensatory and exemplary damages in the amount of $480,000.

Defendants plead in abatement of the cause of action thus asserted, averring (1) that another suit on the same cause of action had been commenced in the Chancery Court of Davidson County and was pending at commencement of the instant action, and (2) that the proper venue of the Tennessee Real Estate Commission is Davidson County. Issue was joined on the plea in abatement and, after extended hearing and argument, the trial court sustained the plea in abatement upon the ground that the venue of the Tennessee Real Estate Commission is Davidson County. Plaintiff excepted to the ruling and prayed an appeal to the Court of Appeals, Eastern Section.

That Court noticed the decision of this Court in a related case, *Chamberlain, et al. v. State ex rel. Brown* (1965), 215 Tenn. 565, 387 S.W.2d 816, which held that the venue of the Tennessee Real Estate Commission is Davidson County. However, the Court of Appeals concluded that the instant controversy was not "a suit against the defendants in their official capacity as members of the Tennessee Real Estate Commission" and, as such, required to be brought in Davidson County. That Court further held (1) that plaintiff's suit sounds in tort and is against individuals, and (2) that, therefore, such action is transitory and was properly instituted in Hamilton County. The judgment below was thus reversed and the case remanded to the trial court.

Parenthetically, it is proper to notice the history of this litigation as it is revealed in the evidence adduced before the trial court.

In 1963, plaintiff was convicted in the Second Division of the Criminal Court of Hamilton County of fraudulent breach of trust, and sentenced to be confined in the State Penitentiary for three years. This conviction was

affirmed on appeal by this Court. In 1964, plaintiff was convicted in Federal District Court of violation of 18 U.S.C. sec. 1341, and sentenced to imprisonment for two years. The Federal sentence was made to run concurrently with any State sentence and was to be executed in a State institution. In 1965, plaintiff was convicted in the Second Division of the Criminal Court of Hamilton County for fraudulent violation of the Trust Receipts Law, and sentenced to be confined in the State Penitentiary for three years.

The wrong asserted here by plaintiff to have been done him occurred in 1962 when the Tennessee Real Estate Commission refused to renew plaintiff's real estate broker's license. Plaintiff appeared before the Commission in 1963 to protest the action of the Commission. Plaintiff's protestations were unavailing and, in June, 1964, plaintiff sued in the Chancery Court of Hamilton County for the writ of mandamus, seeking to compel the defendants to renew his license. That litigation was finally resolved in this Court in 1965. See *Chamberlain, et al v. State ex rel. Brown,* supra. Also in 1964, plaintiff filed an action for damages, Cause No. 3065, against the defendants, in the Circuit Court of Hamilton County. In March, 1965, plaintiff filed a bill for mandamus in the Chancery Court of Davidson County, seeking renewal of his license. In February, 1966, plaintiff moved for a voluntary non-suit in the damage action Cause No. 3065.

In February, 1967, plaintiff filed the present action. In this connection, the above-mentioned plea in abatement filed by defendants in the instant case, rested in part on the ground that the bill for mandamus filed in the Chancery Court of Davidson County, derived from the same alleged wrong as that asserted in the instant

case. The trial court sustained the plea in abatement on July 13, 1967. On July 14, 1967, plaintiff, acting pro se, applied for voluntary dismissal of the bill for mandamus in the Chancery Court of Davidson County. The order of dismissal of July 14, 1967, left only the instant case pending.

This case has been designated by plaintiff as a "Civil Rights Case." Recovery is predicated upon the terms of R.S. secs. 1979-1980, 42 U.S.C.A., secs. 1983, 1985(3), which provide:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." R.S. sec. 1979.

\* \* \* \* \* \*

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote,

from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation against any one or more of the conspirators." R.S. sec. 1980.

After considerable reading and analysis of prior decisions of many jurisdictions, we are not disposed to agree with the views expressed by the Court of Appeals, Eastern Section, on the issue, wherein that Court says:

"Though not an issue in the trial court, the jurisdiction of the Circuit Court of Hamilton County to entertain a cause of action based on a violation of the federal Civil Rights Act has been questioned, primary because of the statement in *Beauregard v. Wingard,* D.C.Cal, 230 F.Supp. 167, 185, that 'Section 1983 * * * created an entirely new right, federal in origin, and cognizable only in a court of the United States.'

State courts are courts of general jurisdiction and, as such, have full jurisdiction to try cases predicated on federal statutes, except in areas where Congress has expressly limited jurisdiction to federal courts, or

where some overriding policy consideration dictates that state court jurisdiction be excluded.

＊　＊　＊　＊　＊　＊

In the field of civil rights, Congress granted the federal district courts original jurisdiction of civil actions brought under 42 U.S.C.A. 1983, and 1985(3), (The Civil Rights Act), but gave no indication that the jurisdiction, thus granted, was exclusive. We know of no basic policy consideration which would prevent a state court from trying a tort action predicated on the federal civil rights laws, where the plaintiff is willing to have the state court do so and selects the forum. Consequently, we are of the opinion, that the Circuit Court of Hamilton County has jurisdiction to entertain the Civil Rights action filed by plaintiff.''

■ To the contrary, after considering the Congressional Records pertinent to this legislation which disclose its historical background, the temper of the times and climate of opinion held and expressed in this regard, we are firmly convinced that there is abundant indication that these statutes creating this action were directed to the federal trial forum, not the respective States. In any event, no policy of this State can be found in its history, judicial or otherwise, that would require the judicial branch of the government of Tennessee to entertain such action.

Section 1979 was enacted as a part of the Ku Klux Act of April 20, 1871. It was the legislative response to a message sent Congress by President Grant earlier in the same year. The Federal Supreme Court has stated that the enactment had ''three main aims:'' (1) overriding certain kinds of state laws, (2) providing a remedy where

state law was inadequate, and (3) providing "a federal remedy where the state remedy, though adequate in theory, was not available in practice." See *Monroe, et al. v. Pape, et al.* (1961), 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492.

Section 1 of the enactment under consideration, as it was originally introduced, read as follows:

"That any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress; *such proceeding to be prosecuted in the several district or circuit courts of the United States,* with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts, under the provisions of the act of the ninth of April, eighteen hundred and sixty-six, entitled 'An act to protect all persons in the United States in their civil rights, and to furnish the means of their vindication,' and the other remedial laws of the United States which are in their nature applicable in such cases." (Emphasis supplied).

Since original enactment these provisions have not been materially changed, in any respect pertinent to the issue with which we are here concerned. *Monroe, et al. v. Pape, et al.* (1961), 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.

In the same case, *Monroe, et al v. Pape, et al.,* supra, the Supreme Court, at some length, commented upon the observations of the legislators upon the proposed enactment:

"It was precisely that breadth of the remedy which the opposition emphasized. Mr. Kerr of Indiana referring to the section involved in the present litigation said:

'This section gives to any person who may have been injured in any of his rights, privileges, or immunities of person or property, a civil action for damages against the wrongdoer in the Federal courts. The offenses committed against him may be the common violations of the municipal law of his State. It may give rise to numerous vexations and outrageous prosecutions, inspired by mere mercenary considerations, prosecuted in a spirit of plunder, aided by the crimes of perjury that subornation of perjury, more reckless and dangerous to society than the alleged offenses out of which the cause of action may have arisen. It is a covert attempt to transfer another large portion of jurisdiction from the State tribunals, to which it of right belongs, to those of the United States. It is neither authorized nor expedient, and is not calculated to bring peace, or order, or domestic content and prosperity to the disturbed society of the South. The contrary will certainly be its effect.'

Mr. Voorhees of Indiana, also speaking in opposition, gave it the same construction:

'And now for a few moments let us inspect the provisions of this bill, inspired as it is by the waning and decaying fortunes of the party in power, and

called for, as I have shown, by no public necessity whatever. The first and second sections are designed to transfer all criminal jurisdiction from the courts of the States to the courts of the United States. This is to be done upon the assumption that the courts of the southern States fail and refuse to do their duty in the punishment of offenders against the law.'

Senator Thurman of Ohio spoke in the same vein about the section we are now considering:

'It authorizes any person who is deprived of any right, privilege, or immunity secured to him by the Constitution of the United States, to bring an action against the wrong-doer in the Federal Courts, and that without any limit whatsoever as to the amount in controversy. The deprivation may be of the slightest conceivable character, the damages in the estimation of any sensible man may not be five dollars or even five cents; they may be what lawyers call merely nominal damages; and yet by this section jurisdiction of that civil action is given to the Federal courts instead of its being prosecuted as now in the courts of the States.'

The debates were long and extensive. *It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.''* (Emphasis supplied).

■ It is plain that a remedy under the laws of Tennessee is available to plaintiff. In the very proceeding filed by plaintiff for mandamus to compel defendants to renew plaintiffs license a Chancery Court could go further and decree to plaintiff damages to which he might be entitled by reason of any unlawful conduct on the part of defendants. See *State ex rel. Wellford v. Williams* (1903), 110 Tenn. 549, 75 S.W. 948, 64 L.R.A. 418, and Gibson's Suits in Chancery, 888 (3rd Ed. 1929). The background of the instant case heretofore noted shows that plaintiff did, in fact, initiate proceedings for this remedy, and was later granted voluntary dismissal on the day after original determination of the instant case in the Hamilton County Circuit Court.

The Federal Supreme Court has held (1) that Federal jurisdiction of causes of action predicated upon R.S. sec. 1979 does not depend upon the absence of a State remedy, (2) that this Federal remedy is supplementary to any State remedy; if such is indeed available, and (3) that the State remedy need not be sought and refused before the Federal remedy is invoked. See *McNeese et al. v. Board of Education* (1963), 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 and *Monroe, et al v. Pape, et al,* supra.

In view of the historical examination given R.S. sec. 1979 by the United States Supreme Court, and in the light of the interpretation given that section, it would be illogical indeed to hold that a State court should enforce, or is required to enforce, an alleged cause of action which owes its very existence to congressional recognition of reluctance or refusal of State Courts to act.

Thus, it results that the judgment of the Court of Appeals is reversed and that of the trial court affirmed; at the costs of respondent.

36

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.

OPINION ON PETITION TO REHEAR

MR. JUSTICE CRESON.

In this cause, a petition to rehear has been filed and considered, together with reply thereto.

To begin with, the petition to rehear fails to meet the requirements of Rule 32 of this Court. In the next place, the petition to rehear, in its entirety, reflects misinterpretation of the Court's original opinion. All of the contentions made, the authorities cited and many others, were critically considered at the time of preparation and deliverance of such original opinion.

The petition to rehear is denied.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.