Luther KRISTENSEN, Plaintiff
and Appellant,

v.

Theron L. STRINDEN, in his Official Ca-
pacity as Registrar of the North Dakota
Department of Motor Vehicles, Defend-
ant and Appellee.

Civ. No. 10422.

Supreme Court of North Dakota.

Dec. 21, 1983.

Nicholas J. Spaeth, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for plaintiff and appellant.

Robert J. Udland, Asst. Atty. Gen., Bismarck, for defendant and appellee.

VANDE WALLE, Justice.

Luther Kristensen has appealed from a judgment dismissing his claim for relief under the Federal and State Constitutions, and 42 U.S.C. § 1983, against Theron L. Strinden, in his official capacity as Registrar of the North Dakota Department of Motor Vehicles. For the reasons which follow, we affirm.

Kristensen served as manager of the Fargo Motor Vehicle Branch Office of the North Dakota Department of Motor Vehicles (hereinafter "Department") from August 1978 to June 30, 1981, at which time Kristensen's "Branch Office Agreement" with the Department expired. The agreement was not renewed.

Strinden is a member of the Republican Party and an appointee of Governor Allen I. Olson, who took office in 1981. Kristensen is a member of the Democratic Party.

Kristensen brought suit claiming, essentially, that his position as branch manager was not renewed by Strinden solely because Kristensen was a member of the Democratic Party, and therefore, his rights to free speech and association were violated under the United States Supreme

Court's decisions in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In his complaint, Kristensen alleged direct causes of action under the First and Fourteenth Amendments to the United States Constitution and under Article I, Sections 1, 4, and 7 of the North Dakota Constitution, as well as a cause of action under 42 U.S.C. § 1983.[1] Kristensen requested an injunction restoring him to his position as manager of the Fargo Branch Office; restitution of lost past income in the amount of $50,000; damages in the amount of $170,000; punitive damages in an amount "exceeding $100,000;" and costs, disbursements, and attorney fees pursuant to 42 U.S.C. § 1988.

Strinden subsequently moved to dismiss the action for failure to state a claim upon which relief can be granted, and, in the alternative, for summary judgment based primarily on the theory that any judgment rendered against Strinden in his official capacity as Registrar would be satisfied from State funds and that such a judgment was barred by the State's sovereign immunity. Further circumstances relating to this contention will be discussed later in the opinion.

The district court granted Strinden's motion to dismiss. The court determined that the State of North Dakota was the real party in interest and, as such, was entitled to raise sovereign immunity as a bar to the suit. The court further concluded that a State is not a "person" subject to suit under § 1983. Kristensen appealed from this judgment.

Broadly stated, the issue raised by Kristensen in this case is whether or not the doctrine of sovereign immunity bars his constitutional challenge to Strinden's failure to reappoint him as branch manager. Before reaching this question, however, we first consider the appellee's contention that our State courts should not entertain suits brought under § 1983.

I

■ Although our court has never directly decided the issue [see *Falkenstein v. City of Bismarck*, 268 N.W.2d 787, 789 n. 1 (N.D.1978)], it is now well settled that claims brought under § 1983 are fully cognizable in State courts. *Maine v. Thiboutot*, 448 U.S. 1, 3 n. 1, 100 S.Ct. 2502, 2503 n. 1, 65 L.Ed.2d 555, 558 n. 1 (1980); *Martinez v. California*, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481, 488 n. 7 (1980). See also *Allen v. McCurry*, 449 U.S. 90, 99 n. 15, 101 S.Ct. 411, 417 n. 15, 66 L.Ed.2d 308, 316 n. 15 (1980). The appellee, however, correctly points out that the United States Supreme Court has not determined whether or not State courts are obligated to exercise jurisdiction over § 1983 suits. See *Thiboutot, supra; Martinez, supra; McCurry, supra.* The appellee relies upon the Tennessee Supreme Court's decision in *Chamberlain v. Brown*, 223 Tenn. 25, 442 S.W.2d 248 (1969), matters of public policy, and the existence of an adequate State remedy via "a direct cause of action under the State Constitution" for the proposition that there is no need to require the courts of this State to entertain a § 1983 action.

In *Chamberlain, supra*, 223 Tenn. at 35, 442 S.W.2d at 252, the court refused to exercise jurisdiction in a § 1983 action, concluding that "it would be illogical indeed to hold that a State court should enforce, or is required to enforce, an alleged cause of action which owes its very existence to

---

**1.** 42 U.S.C. § 1983, which is derived from the Federal Civil Rights Act of 1871, provides:

"*§ 1983. Civil action for deprivation of rights*
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the dep-

rivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

congressional recognition of reluctance or refusal of State courts to act."

However, every State court that has considered the *Chamberlain* decision has rejected its reasoning in favor of exercising jurisdiction in § 1983 actions. See *New Times, Inc. v. Arizona Board of Regents,* 20 Ariz.App. 422, 513 P.2d 960 (1973), *vacated on other grounds,* 110 Ariz. 367, 519 P.2d 169 (1974); *Brown v. Pitchess,* 13 Cal.3d 518, 119 Cal.Rptr. 204, 531 P.2d 772 (1975); *Bohacs v. Reid,* 63 Ill.App.3d 477, 20 Ill.Dec. 304, 379 N.E.2d 1372 (1978); *Alberty v. Daniel,* 25 Ill.App.3d 291, 323 N.E.2d 110 (1974); *Cooper v. Hutchinson Police Dept.,* 6 Kan.App.2d 806, 636 P.2d 184 (1981), *overruled on other grounds, Miller v. City of Overland Park,* 231 Kan. 557, 646 P.2d 1114 (1982); *Thiboutot v. State,* 405 A.2d 230, *aff'd sub nom. Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *De Bleecker v. Montgomery County,* 48 Md.App. 455, 427 A.2d 1075 (1981), *reversed on other grounds,* 292 Md. 498, 438 A.2d 1348 (1982); *Shapiro v. Columbia Un. Nat. Bk. & Tr. Co.,* 576 S.W.2d 310 (Mo.1978), *cert. denied,* 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979); *Brody v. Leamy,* 90 Misc.2d 1, 393 N.Y.S.2d 243 (Sup.Ct.Dutchess Cty.1977); *Commonwealth ex rel. Saunders v. Creamer,* 11 Pa.Commw. 160, 312 A.2d 454 (1973), *vacated on other grounds,* 464 Pa. 2, 345 A.2d 702 (1975); *Terry v. Kolski,* 78 Wis.2d 475, 254 N.W.2d 704 (1977).

■ In addition, we fail to see how public policy would be served by barring access to the courts of this State to its citizens who choose to litigate crucial civil rights issues, which § 1983 cases raise, in a State rather than a Federal court. Nor do we believe that all defendants in § 1983 actions should be required to defend these actions only in front of Federal judges. It would indeed be contrary to public policy to preclude our State courts from granting to plaintiffs a full measure of relief from wrongs inflicted upon them. In sum, we believe our State courts "are no less proper a forum for the vindication of civil rights than the federal courts." *Royer v. Adams,* 121 N.H. 1024, 1026, 437 A.2d 316, 317 (1981).

■ Assuming *arguendo* that the existence of an adequate State remedy can be considered in deciding whether or not § 1983 actions should be entertained in State courts,[2] the appellee's contention that Kristensen's direct cause of action under the State Constitution provides him with an adequate State remedy is speculative at best. Although this court, citing as authority *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), held in *State v. Howe,* 308 N.W.2d 743 (N.D.1981), that our courts have the power to fashion a remedy, without legislative authorization, to vindicate the violation of a person's constitutional rights, our court to date has not implied a direct cause of action for damages for violation of the North Dakota constitutional provisions relied upon by Kristensen. The possibility that this court might fashion such a remedy one day in the future can hardly be considered an "adequate" State remedy in the context of the present case.

■ Most important, however, the appellee has not brought to our attention any authority under State law which allows this court to choose to not entertain § 1983 actions. The court in *Chamberlain, supra,* 223 Tenn. at 31, 442 S.W.2d at 250–251, stated that "no policy of this State can

---

2. In *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492, 503 (1961), the United States Supreme Court, in response to a claim that a § 1983 action was barred in Federal court because the State of Illinois by its Constitution and laws outlawed unreasonable searches and seizures, stated:

"It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." See also *Brody v. Leamy,* 90 Misc.2d 1, 393 N.Y.S.2d 243 (Sup.Ct.Dutchess Cty.1977). Cf. *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947). Compare with *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

be found in its history, judicial or otherwise, that would require the judicial branch of the government of Tennessee to entertain such action." Our law is to the contrary. Article I, Section 9, of the North Dakota Constitution provides in part that "[a]ll courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay." Our Constitution does not permit State courts any discretion in determining whether or not to entertain actions properly brought before them.

■ We therefore conclude that our State courts are vested with concurrent jurisdiction to entertain suits brought under § 1983.

## II

We now turn to the merits of Kristensen's claim that sovereign immunity does not bar his constitutional challenge to Strinden's failure to reappoint him as branch manager. We believe this contention necessitates three separate inquiries: (A) whether or not Kristensen's action is, in effect, a suit against the State of North Dakota; (B) whether or not Kristensen's suit can be considered an action "arising upon contract," for which the State has waived its immunity under § 32–12–02, N.D.C.C.; and (C) whether or not the State may raise its sovereign immunity as a bar to a suit in State court for the alleged violation of Federal constitutional rights.

## A

In determining whether or not Kristensen has in fact brought suit against the State of North Dakota, a further examination of some of the procedural circumstances present in this case is appropriate.

Kristensen's complaint was amended on two occasions. His initial complaint and first amended complaint named as the defendant "Theron L. Strinden, Registrar of the North Dakota Department of Motor Vehicles." After Strinden's motion for partial summary judgment was denied by the district court,[3] Strinden moved for dismissal based upon the theory of sovereign immunity. Before ruling on the issue, the district court requested that Kristensen amend his complaint to clarify whether or not Strinden was being sued in his individual capacity, his official capacity as Registrar, or both. Kristensen amended his complaint, naming as the defendant "Theron L. Strinden, in his Official Capacity as Registrar of the North Dakota Department of Motor Vehicles."

In addition, Kristensen's counsel sent a letter to the trial judge which stated in relevant part:

"I am sending to you a personal copy of the Second Amended Complaint which has been filed with the clerk in connection with this matter. As you will see upon review of the Complaint, the caption has been changed to reflect the fact that Theron Strinden is being sued in his official capacity as Registrar of the North Dakota Department of Motor Vehicles. I conferred with my client on this issue, and it is his desire that the lawsuit proceed against Mr. Strinden solely in the latter's official capacity."

■ The fact the State is not named as a party defendant does not conclusively establish that the suit is not one against the State. In *State v. Lowe*, 54 N.D. 637, 210 N.W. 501 (1926), our court held in paragraph 3 of the syllabus:

"The courts can, and will, look through and beyond the nominal parties to an

---

**3.** Strinden's motion for partial summary judgment was based upon his contention that, as a matter of law, Kristensen was not a State employee, but an independent contractor, and under the decision of the Eighth Circuit Court of Appeals in *Sweeney v. Bond*, 669 F.2d 542 (8th Cir.), *cert. denied*, — U.S. —, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982), he therefore was not pro-

tected from dismissal because of his political affiliation. The district court denied the motion on the ground that a genuine issue of fact existed.

Although the appellee has invited our court to decide the instant case on this basis, we decline to do so and express no opinion as to the merits of this contention.

action to determine who are the real parties in interest, and, where the state is not specifically named as a party defendant, the omission is not conclusive that the suit is not against the state, nor that the state is not the real party in interest."

Accord, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Ex parte State of New York, No. 1*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).[4]

It has also been held that suing a State official solely in his official capacity, as opposed to suing the official in his individual or personal capacity, is tantamount to suing the State itself. See *Provet v. State of N.Y.*, 546 F.Supp. 492 (S.D.N.Y.1982); *Langton v. Maloney*, 527 F.Supp. 538 (D.Conn.1981); *Anderson v. Luther*, 521 F.Supp. 91 (N.D.Ill.1981); *Parrilla v. Cuyler*, 447 F.Supp. 363 (E.D.Pa.1978). Cf. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611, 635 n. 55 (1978).

The instant case is somewhat similar to the circumstances present in *Spielman v. State*, 91 N.W.2d 627 (N.D.1958). The plaintiff in *Spielman, supra*, 91 N.W.2d at 628, brought a negligence action against the State of North Dakota, "Sivert W. Thompson as State Highway Commissioner of the North Dakota State Highway Department," and an employee of the State Highway Department. The defendants argued that the complaint stated no cause of action because they were subject to governmental immunity. In regard to defendant Thompson, our court concluded that because the complaint failed to allege facts tending to show individual or personal negligence on his part, and because he was made a defendant only in his official capacity as State Highway Commissioner, his liability was "subject to the same defenses and immunities as that of the State of North Dakota." *Spielman, supra*, 91 N.W.2d at 629.

An examination of the circumstances present here leads us to the same conclusion. Although the State is not a nominal party to the suit, it is evident from the facts stated in the complaint and Kristensen's conscious election to sue Strinden solely in his official capacity as Registrar, that his claim for reinstatement of his former position with back pay and damages seeks to impose liability upon the State of North Dakota rather than upon Strinden individually.

Kristensen argues, however, that the district court, in dismissing the action, did exactly what the United States Supreme Court proscribed in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In *Scheuer*, the Supreme Court

---

4. *Scheuer* and *Ex parte State of New York* involved determinations of whether or not a suit was in actuality to be deemed against a State in an Eleventh Amendment context. The Eleventh Amendment to the United States Constitution provides:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."

The Eleventh Amendment has been interpreted to concern only "questions of federal-court jurisdiction and the extent to which the States, by ratifying the Constitution and creating federal courts, had authorized suits against themselves in those courts." *Nevada v. Hall*, 440 U.S. 410, 420–421, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416, 425 (1979). Thus, no Eleventh Amendment question is present when an action is brought in a State court. *Maine v. Thiboutot*, 448 U.S. 1, 9 n. 7, 100 S.Ct. 2502, 2506 n. 7, 65 L.Ed.2d 555, 562 n. 7 (1980).

In attempting to decide whether or not suits nominally against State officials are actually suits against the State itself and therefore outside Federal court jurisdiction, the Supreme Court has distinguished between cases in which monetary damages are sought, as opposed to prospective, injunctive relief. See *Cate v. Oldham*, 707 F.2d 1176 (11th Cir.1983), and cases cited therein. Our court has not engaged in making similar distinctions when interpreting the applicability of sovereign immunity in State court actions. E.g., *Senger v. Hulstrand Const., Inc.*, 320 N.W.2d 507 (N.D.1982); *State v. Lowe*, 54 N.D. 637, 210 N.W. 501 (1926). Nevertheless, with the exception of the above noted Eleventh Amendment distinctions, we believe the basic principles relating to the nominal and real parties in interest are substantially similar where such determinations are required in a State court.

held, on the basis of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that State officials do not enjoy personal Eleventh Amendment immunity to damage suits for deprivations of Federal rights under color of State law under § 1983. The lower court had "held ... that the defendants were being sued in their official and representative capacities and that the actions were therefore in effect against the State of Ohio." *Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686, 40 L.Ed.2d at 96. The Supreme Court ruled, in effect, that an Eleventh Amendment bar should not lightly be assumed from the face of the complaint. The Court stated that an analysis of the complaint revealed "petitioners allege facts that demonstrate they are seeking to impose individual and personal liability on the *named defendants* for what they claim—but have not yet established by proof—was a deprivation of federal rights by these defendants under color of state law." *Scheuer, supra,* 416 U.S. at 238, 94 S.Ct. at 1687, 40 L.Ed.2d at 97–98. [Emphasis in original.] Kristensen therefore argues that the district court in this case should have come to the conclusion that his complaint sought to impose personal liability upon Strinden.

We do not agree. Although it is not entirely clear from the Supreme Court's decision in *Scheuer*, an analysis of the Sixth Circuit Court of Appeals decision in that case reveals that the defendants were sued either explicitly or implicitly in both their individual and official capacities. See *Krause v. Rhodes*, 471 F.2d 430 (6th Cir. 1972), *rev'd sub nom. Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Several Federal courts appear to have interpreted *Scheuer* to stand for the proposition that in cases "in which the plaintiff has not specified whether the defendants are sued in their official or personal capacities, the 'allegations against

state officials should be liberally construed in the plaintiff's favor.'" *Parrilla v. Cuyler,* 447 F.Supp. 363, 365 (E.D.Pa.1978) [quoting *Flesch v. Eastern Pa. Psychiatric Institute,* 434 F.Supp. 963, 978 (E.D.Pa. 1977) ]. See also *Langton v. Maloney,* 527 F.Supp. 538, 543 n. 9 (D.Conn.1981); *Lemberos v. Laurel Racecourse, Inc.,* 489 F.Supp. 1376 (D.Md.1980); *Ahmad v. Burke,* 436 F.Supp. 1307 (E.D.Pa.1977).

In the present case, Kristensen was given the opportunity to amend his complaint and name Strinden in his official capacity, his individual capacity, or both. He elected to sue Strinden solely in his official capacity. Kristensen cannot now claim at this juncture that he actually seeks to hold Strinden personally liable.[5]

Kristensen also argues that § 1983, by its very terms, requires that "official capacity" be alleged. A failure to plead official capacity, he contends, would have been grounds for dismissal.

In *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572, 577 (1980), the Supreme Court stated:

"By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."

The Eighth Circuit Court of Appeals declined to accept the converse of Kristensen's argument in *Bishop v. Tice,* 622 F.2d 349, 353–354 (8th Cir.1980):

"The government contends that the complaint, against the defendants as individuals and not in their official capacity, fails to allege governmental action. We disagree. First, suing an individual in his capacity as an officer of government,

---

**5.** It is interesting to note that when asked during oral arguments why Kristensen brought the § 1983 action in State, rather than Federal, court, counsel stated that "we were aware of the Eleventh Amendment problem which ... figures prominently." Of course, the Eleventh Amendment becomes a "problem" only when a party seeks in essence to impose liability against a State in Federal court. E.g., *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

while necessary to secure relief from the government, is not indispensable to an allegation of governmental action. An individual officer of government may be personally liable for damages for actions that have deprived the plaintiff of his constitutional rights." [6]

See also *Timmy S. v. Stumbo*, 537 F.Supp. 39 (E.D.Ky.1981).

It is clear from these authorities that Kristensen's contention is without merit. We conclude that the State is the real party in interest and is therefore entitled to raise whatever defenses and immunities it has available.

B

Kristensen next argues that the State has waived its immunity to his lawsuit.

Article I, Section 9, of the North Dakota Constitution provides in part that "[s]uits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct." In *Senger v. Hulstrand Const., Inc.*, 320 N.W.2d 507, 510 (N.D.1982), our court declined to judicially abolish the rule of sovereign immunity, holding instead that Article I, Section 9, "entrusts the matter of sovereign immunity to the Legislative Assembly." Section 32–12–02, N.D.C.C., provides in pertinent part that "[a]n action respecting the title to property, or arising upon contract, may be brought in the district court against the state the same as against a private person." Kristensen contends that his suit is an action "arising upon contract," for which the State has waived its immunity.

Any suit not within the express provision of § 32–12–02, N.D.C.C., may not be brought against the State. *Stark County v. State*, 160 N.W.2d 101 (N.D. 1968). In *Ford Motor Co. v. State*, 59 N.D. 792, 796, 231 N.W. 883, 884 (1930), this court held that under the predecessor statute, whether or not a case is one "arising upon contract" within the purview of the statute depends upon the "ordinary accepted legal meaning of that term." See also *Northern Pacific Railway Co. v. Morton County*, 131 N.W.2d 557 (N.D.1964); *Little v. Burleigh County*, 82 N.W.2d 603 (N.D. 1957).

Kristensen's action does not lend itself to easy characterization. In *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128, 136 (1976), the Supreme Court stated that § 1983, in effect, "creates a species of tort liability." Our court has stated that "[t]he immunity of the state from liability for tort is not waived by legislative enactment unless the waiver appears by express provisions of the statute or necessary inference therefrom." *Spielman v. State*, 91 N.W.2d 627, 630 (N.D. 1958).

These authorities do not support Kristensen's contention. The "constitutional tort" alleged in the instant case differs significantly from an ordinary contract action. Kristensen's claim is founded upon the alleged *reason* he was not reappointed as branch manager, i.e., political affiliation, rather than upon an ordinary breach of any contractual relationship itself.[7] See *Braden v. Texas A & M University System*, 636 F.2d 90 (5th Cir.1981). As

---

**6.** In an Eleventh Amendment context, the Supreme Court has stated:

"There is a well-recognized irony in *Ex parte Young;* unconstitutional conduct by a state officer may be 'state action' for purposes of the Fourteenth Amendment yet not attributable to the State for purposes of the Eleventh. Nevertheless, the rule of *Ex parte Young* is one of the cornerstones of the Court's Eleventh Amendment jurisprudence." *Florida Dept. of State v. Treasurer Salvors*, 458 U.S. 670, 685, 102 S.Ct. 3304, 3315, 73 L.Ed.2d 1057, 1069 (1982).

**7.** We note that Kristensen was not fired from his position as branch manager. Rather, he was not reappointed after his "Branch Office Agreement" expired. Although the Supreme Court has stated that this is not a valid distinction for purposes of First Amendment analysis [see *Branti v. Finkel*, 445 U.S. 507, 512 n. 6, 100 S.Ct. 1287, 1291 n. 6, 63 L.Ed.2d 574, 580 n. 6 (1980) ], we do not deem that rationale controlling in regard to issues of statutory construction, i.e., whether or not the instant action technically qualifies under § 32–12–02, N.D.C.C., as one "arising upon contract."

such, Kristensen's action cannot be considered "arising upon contract."

We therefore conclude that Kristensen's alleged cause of action in this case does not fall within the ambit of § 32–12–02, N.D. C.C. The Legislative Assembly has not consented to suit for the action brought by Kristensen.

### C

Our final inquiry is whether or not the State may raise its sovereign immunity as a bar to Kristensen's action for the alleged violation of Federal constitutional rights. Kristensen argues that the State's sovereign immunity does not bar his action for the alleged constitutional violations in State court because the only absolute immunity available to a State in a § 1983 action is the immunity provided by the Eleventh Amendment and because the Supremacy Clause[8] requires us to cast aside State law, including sovereign immunity, if it is inconsistent with the commands of the United States Constitution.

Kristensen relies principally upon *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), for the proposition that the Supreme Court "unequivocably rejected the sovereign immunity claim" made by the defendants in a "state court § 1983 action like the present action." At issue in *Martinez* was a California statute which purported to immunize a "public entity" and a "public employee" for injuries resulting from decisions to parole or release a prisoner from custody. Although the Court concluded that the State's immunity statute was not unconstitutional when applied to defeat a tort claim arising under State law, in regard to the § 1983 claim, the Court stated, "It is clear that the California immunity statute does not control this claim even though the federal cause of action is being asserted in the state courts." *Martinez, supra*, 444 U.S. at 284,

100 S.Ct. at 558, 62 L.Ed.2d at 488. The only authority cited by the Court for this proposition is found in the following footnote:

" 'Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced. See *McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir.1968). The immunity claim raises a question of federal law.' *Hampton v. Chicago*, 484 F.2d 602, 607 (CA7 1973), cert. denied, 415 U.S. 917 [94 S.Ct. 1413, 39 L.Ed.2d 471]." *Martinez, supra*, 444 U.S. at 284 n. 8, 100 S.Ct. at 558 n. 8, 62 L.Ed.2d at 488 n. 8.

See also *Owen v. City of Independence*, 445 U.S. 622, 647 n. 30, 100 S.Ct. 1398, 1413 n. 30, 63 L.Ed.2d 673, 691 n. 30 (1980).

In view of the factual differences present here and previous Supreme Court decisions inconsistent with this argument and not even discussed by the Court, we cannot give *Martinez* the expansive reading espoused by Kristensen. Neither *Martinez*, nor the cases cited in the opinion, *McLaughlin* and *Hampton*, involved State sovereign immunity. *Martinez* specifically involved the immunity of state parole officials as a matter of Federal law rather than the immunity of the State itself, and the Court, in any event, declined to decide the issue because the appellants had failed to allege a claim for relief under Federal law. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), also relied upon by Kristensen, did not directly involve the sovereign immunity of the State itself. As noted earlier herein, the Court in *Scheuer* explicitly found that the complaint sought

---

8. Article VI, Clause 2, of the United States Constitution provides:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

to impose individual and personal liability upon the State officials involved.

■■■■■ Perhaps the decision which militates the most against adopting Kristensen's reading of the *Martinez* case is the Supreme Court's decision in *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358, 367 (1979). The Court held that Congress, in enacting § 1983, did not intend "to override the traditional sovereign immunity of the States."[9] We recognize that the Court's decision in *Quern* rested in part on the absence of any congressional intent to override the States' Eleventh Amendment immunity to suits in Federal courts, and thus the case does not definitively settle the question of what effect § 1983 may have on a State's sovereign immunity when an action is brought in a State court.[10] However, we agree with the observations of the court in *Kapil v. Ass'n of Pa. State College, Etc.,* 68 Pa. Commw. 287, 292, 448 A.2d 717, 720–721 (1982):

> "It would seem that one of the most 'traditional' dimensions of state sovereign immunity is that which states historically have enjoyed *in their own courts* from most suits for money damages. In any event, that dimension of state sovereign immunity clearly preexisted Section 1983 of the federal Civil Rights Act.
>
> "Given the *Quern* construction of Section 1983, it follows that a state's sovereign immunity, from a Section 1983 damage action, is not solely that immunity

which the 11th amendment of the federal Constitution provides as to such suits in federal courts. Rather, a state's 'traditional' sovereign immunity, to the extent that the state has preserved it, would also bar a Section 1983 damage action in the state's own courts.... Thus, a state's own courts may not entertain such an action against a state or its agencies, unless the state has in that respect waived its sovereign immunity." [Emphasis in original.]

Several other State courts which have addressed the issue accord with this rationale. See *Thiboutot v. State,* 405 A.2d 230, 237 (Me.1979), *aff'd sub nom. Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) ["Though the question is not free from doubt, it is our conclusion that, in the absence of waiver by the state of its sovereign immunity, the state may constitutionally interpose that immunity as a bar to a class action brought in a state court under 42 U.S.C. § 1983 ..."]; *De Bleecker v. Montgomery County,* 292 Md. 498, 513 n. 4, 438 A.2d 1348, 1356 n. 4 (1982) ["Unlike municipalities, the State and its agencies are immune from suit under § 1983, unless the immunity is waived"]; *Woodbridge v. Worcester State Hospital,* 384 Mass. 38, —— n. 7, 423 N.E.2d 782, 786 n. 7 (1981) ["Pending further clarification from the Supreme Court, we conclude that a State's liability for damages under § 1983 does not depend on whether suit is brought in State or Federal

---

**9.** The principle that certain common law immunities existing at the time of the passage of the Civil Rights Act of 1871 were not abrogated by the enactment of § 1983 appears to be firmly rooted in United States Supreme Court case law. In *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673, 685 (1979), the court stated:

"Where the immunity claimed by the defendant was well established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity."

See, e.g., *Briscoe v. LaHue,* —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) [absolute immunity for witnesses in judicial proceedings]; *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) [absolute immunity for

State prosecutors]; *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) [absolute immunity for State judges]; *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) [absolute immunity for State legislators].

**10.** In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court overruled the holding in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that cities and other municipal corporations are not "persons" within the meaning of § 1983. The Court's holding in *Monell,* however, was expressly "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Monell, supra,* 436 U.S. at 690 n. 54, 98 S.Ct. at 2035 n. 54, 56 L.Ed.2d at 635 n. 54.

court"]; *Brody v. Leamy,* 90 Misc.2d 1, 28, 393 N.Y.S.2d 243, 262 (Sup.Ct. Dutchess Cty.1977) ["[B]y a parity of reasoning, while the Eleventh Amendment in itself is not applicable in state courts, since no federal cause of action could exist in federal court, none can be brought in state court"]. Cf. *State v. Green,* 633 P.2d 1381 (Alaska 1981); *Edgar v. State,* 92 Wash.2d 217, 595 P.2d 534 (1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1026, 62 L.Ed.2d 760 (1980); *Boldt v. State,* 101 Wis.2d 566, 305 N.W.2d 133, *cert. denied,* 454 U.S. 973, 102 S.Ct. 524, 70 L.Ed.2d 393 (1981).[11]

Furthermore, several of the Supreme Court's earlier decisions reviewing actions in State courts against States on constitutional claims appear to support the proposition that a State, notwithstanding the Supremacy Clause, may raise sovereign immunity as a bar to a suit for violation of Federal constitutional rights. In *Palmer v. Ohio,* 248 U.S. 32, 34, 39 S.Ct. 16, 63 L.Ed. 108, 109 (1918), the Court stated that "[t]he right of individuals to sue a State, in either a federal or a state court, cannot be derived from the Constitution or laws of the United States. It can come only from the consent of the State." The Court also stated in *Hopkins v. Clemson College,* 221 U.S. 636, 642, 31 S.Ct. 654, 656, 55 L.Ed. 890, 894 (1911), that "[w]ith the exception

named in the Constitution, every State has absolute immunity from suit. Without its consent it cannot be sued in any court, by any person, for any cause of action whatever." See also *Cunningham v. Macon & Brunswick R.R. Co.,* 109 U.S. 446, 451, 3 S.Ct. 292, 296, 27 L.Ed. 992, 994 (1883) ["[N]either a State nor the United States can be sued as defendant in any court in this country without their consent"]; *Beers v. State of Arkansas,* 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991, 992 (1857) ["It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission"]. *But see General Oil Co. v. Crain,* 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754 (1908).[12]

Kristensen argues that the effect of the district court's decision, if upheld, would be "to end forever constitutional challenges to state actions brought to the courts of the state." He further contends that individuals like himself would be left "without any remedy whatsoever for serious transgression of their constitutional rights."

However, Kristensen's remedy is barred only as it applies to the State itself. See *Spielman v. State,* 91 N.W.2d 627 (N.D. 1958). By choosing to not seek to hold Strinden personally liable, Kristensen himself has imposed the barrier in this case.

**11.** The courts in *Green, Edgar,* and *Boldt* ultimately determined, as did the district court in this case, that a State is not a "person" for the purposes of § 1983. These courts reached this conclusion by reading *Quern* as having definitively settled the question. The concurring opinions of Justices Brennan and Marshall in *Quern* also conclude that this is exactly what the majority decided. However, there is no unanimous consensus among the courts on this point. E.g., *Smith v. State,* 122 Mich.App. 340, 333 N.W.2d 50 (1983).

Although the Court in *Quern* construed § 1983 as incorporating the "traditional sovereign immunity" of the States, the Court nevertheless concluded that a State may waive its Eleventh Amendment immunity to suits brought under the statute. See also *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Thus, there would seem to be no need to frame the immunity issue as to whether or not a State is a "person" under § 1983 in cases where the State has not waived its immunity.

See *Kapil, supra,* 68 Pa.Commw. at 292 n. 6, 448 A.2d at 720 n. 6; *Green, supra,* 633 P.2d at 1382–1383 (Rabinowitz, C.J., dissenting).

We cite *Green, Edgar,* and *Boldt* for their underlying rationale only, and, because our State has not waived its immunity to suit under § 1983, do not decide whether or not a State is a "person" under the statute.

**12.** The inconsistencies in this area of the law have spawned a considerable amount of speculation by legal scholars. See, e.g., Wolcher, *Sovereign Immunity and the Supremacy Clause: Damages Against States in Their Own Courts for Constitutional Violations,* 69 Cal.L.Rev. 189 (1981); Liberman, *State Sovereign Immunity in Suits to Enforce Federal Rights,* 1977 Wash.U. L.Q. 195; P. Bator, P. Mishkin, D. Shapiro, and H. Wechsler, *Hart and Wechsler's The Federal Courts and The Federal System,* at 231–232 (2d ed., Supp.1981).

 We hold that the State may constitutionally raise sovereign immunity as a bar to Kristensen's action.[13]

The judgment is affirmed.

ERICKSTAD, C.J., PEDERSON and SAND, JJ., and PAULSON [*], Surrogate Justice, concur.

13. We have not made specific distinctions in our discussion between Kristensen's § 1983 claim and his direct causes of action under the Federal and State Constitutions.

First, we note that although most of the decisions cited in our discussion involved immunity claims arising in the context of § 1983 actions, they would be equally applicable to Kristensen's direct cause of action under the United States Constitution. In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court held that it is not necessary to draw distinctions for purposes of immunity law between suits brought under § 1983 and suits brought directly under the Constitution. See also *T & M Homes, Inc. v. Township of Mansfield*, 162 N.J.Super. 497, 393 A.2d 613 (1978).

Second, no Supremacy Clause question is present in regard to Kristensen's direct cause of action under the State Constitution, assuming, of course, that such a cause of action exists. See discussion at pages 70–71.

Finally, our decision should not be read as *sub silentio* acceptance of the proposition that direct causes of action under the Federal Constitution are available against State officials. It has been noted recently that "[t]he availability of a *Bivens*-type Fourteenth Amendment remedy against nonfederal defendants is subject to serious question." *Morris v. Washington Metropolitan Area Transit*, 702 F.2d 1037, 1042 n. 10 (D.C.Cir.1983) [referring to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)]. See also *Bishop v. Tice*, 622 F.2d 349 (8th Cir.1980). Cf. *Cunha v. City of Algona*, 334 N.W.2d 591 (Iowa 1983). *But see State v. Howe*, 308 N.W.2d 743 (N.D.1981).

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.